### John L. Spalding v. Louis Heideman et al.

1. AGENTS—*Liability for Disobedience of Instructions.*—It is a fundamental duty of an agent to obey all lawful and reasonable instructions given to him by his principal; and this, although he may think he knows of a very much better way. If he disobeys instructions given him, and because of such disobedience a loss or injury comes to his principal, such principal may recover such substantial damages as he has sustained by reason of such disobedience.

2. PREFERENCES—*Right of a Debtor to Prefer One Creditor Over Another.*—A debtor has the right to prefer one creditor over another, and thus to rid himself of an obligation held by such creditor, rather than to pay an obligation held by the other.

Bill to Foreclose a Mortgage.—Appeal from the Circuit Court of Iroquois County; the Hon. John Small, Judge, presiding. Heard in this court at the April term, 1901. Affirmed in part and reversed in part. Opinion filed July 12, 1901.

**Statement.**—February 20, 1900, Spalding filed a bill in the Circuit Court of Iroquois County to foreclose a mortgage, which bill was amended, making Agnes Bolger, a judgment creditor of Louis Heideman, as well as Louis Heideman, parties defendant thereto. Heideman filed no answer to said bill; he was defaulted, and a decree *pro confesso* was taken against him. Agnes Bolger answered the bill, and also filed a cross-bill, setting up a judgment of $1,650 obtained by her on the first of March, 1898, against Louis Heideman, and claiming that the mortgage to Bishop Spalding was given without any consideration, and for the purpose of covering up the property of said Louis Heideman. The cross-bill called for a discovery of any property, real, personal or mixed, that belonged to said Louis Heideman, and required answers under oath from both Heideman and Spalding, and numerous questions were in said bill propounded to each of said respondents. Each answered said cross-bill under oath, specifically denying all combination and confederacy to injure or defraud the cross-complainant or conceal aught from her, and stated the consideration from which said mortgage was given substantially as follows:

That in the year 1893, Louis Heideman, being a parish priest of the Catholic church in Loda, Illinois, wishing to erect in the city of Paxton a Catholic church, he requested the privilege of so doing from Bishop Spalding, the bishop of the diocese in which Paxton is located. Spalding, as such bishop, owning several lots in said city of Paxton, authorized Heideman to build a church thereon, not to exceed in cost the sum of $2,000. Father Heideman proceeded to build a church on the lots costing something over $7,000, which excess of cost was unknown to Bishop Spalding until after the church was built.

There were numerous mechanics' liens claims against said church, and in order to avoid trouble, Spalding agreed to pay the same if Heideman would secure him in the sum of $3,500 on lands that Heideman then owned in Loda, Illinois. This Heideman agreed to do.

The church was completed and dedicated some time in

the summer, about the month of June, 1894, at which time Bishop Spalding was present and the agreement, as aforesaid, was then finally consummated, and Heideman agreed that he would have a mortgage made on the Loda property, as heretofore set forth. But Heideman neglected it for some time, and in the meantime, about December 13, 1894, Bishop Spalding, in order to pay off said mechanics' liens which Heideman had, by exceeding the authority given him, allowed to come against said property, and which he had agreed to pay, but was unable to do so, borrowed from one Chandler, of Chicago, $4,000 on five years' time, at six per cent interest, payable semi-annually, and gave a trust deed on the church property in Paxton, Illinois, to secure the same. Heideman neglected to give a mortgage on his property in Loda, Illinois, until February 11, 1895, when said mortgage was given. It was recorded on the 12th day of February, 1895.

Upon the hearing, Agnes Bolger, the judgment creditor and complainant in the cross-bill, stated a conversation she had in Peoria, Illinois, with Bishop Spalding some time between July 4 and 10, 1895, as follows:

" At that time I had a conversation with Bishop Spalding in relation to his business with Father Heideman in connection with Heideman's individual property at Loda, and asked him why he was helping Father Heideman to keep me from securing my judgment? He said he had nothing to do with that, he was not holding any property in any way to keep me from securing my judgment. Then I asked him why he had taken a mortgage on Father Heideman's property ? He said he had no mortgage; he said something about a deed to the property."

Miss Bolger began suit against Father Heideman on the 4th day of February, 1895. The summons was served on him on the 6th day of February, 1895. Five days later, on the 11th day of February, 1895, Father Heideman gave to Bishop Spalding the mortgage in controversy in this suit. At the March, 1895, term of the Iroquois Circuit Court, and very shortly after the mortgage was given, Miss Bolger recovered a judgment for $1,650 against Heideman. This case was

taken to the Appellate Court, by writ of error, and there the judgment was reversed and the cause remanded. On the 10th day of July, 1895, Miss Bolger filed a creditor's bill in which she attacked the validity of this mortgage. Heideman and Spalding filed sworn answers to that bill; but before the cause came on for hearing the Appellate Court reversed the judgment and remanded the cause for another trial. This necessitated the dismissal of Miss Bolger's creditor's bill. After remandment, the suit at law was reinstated and upon a second trial thereof, in March, 1898, a verdict and judgment for $1,650 was again rendered in favor of Miss Bolger. This is the judgment upon which is based the cross-bill now under consideration. The execution on this $1,650 judgment was issued on July 27, 1898, and returned by the sheriff unsatisfied, on October 26, 1898. It is claimed by Miss Bolger that the indebtedness from Father Heideman to her upon which she obtained judgment against him antedated the claim of Spalding against Heideman.

DOYLE & CRANGLE and URIAH COPP, attorneys for appellant.

NELLY B. KESSLER and C. H. PAYSON, attorneys for appellees.

MR. JUSTICE WATERMAN delivered the opinion of the court.

It is a fundamental duty of an agent to obey all reasonable and lawful instructions given to him by his principal; and this although the agent may think he knows of a very much better way. If the agent disobeys instructions given to him, and because of such disobedience, loss or injury come to the principal, the latter may recover from the agent such substantial damages as he has sustained by reason of such disobedience. Mechem on Agency, Sec. 473-4.

Father Heideman having exceeded the authority given to him by Bishop Spalding, and thereby charged the bishop's property with liens amounting to several thousand dollars

and quite likely involved the bishop in a large personal liability, was responsible to the bishop for all costs and expense he was put to by reason of such disobedience.

In the sworn answers made to the cross-bill the bishop and Father Heideman state also that the latter was personally liable for the mechanics' liens resting upon said church. It was therefore entirely proper that Father Heideman should secure the bishop against the consequences of his disobedience. By so doing he was not only endeavoring to make the bishop whole, but to have his personal obligations to the parties who held the mechanics' liens discharged. The liens upon the bishop's property created by the acts of Father Heideman, as well as the undertaking of the bishop to satisfy such liens and thereby relieve Father Heideman of his personal obligation to the holders thereof, constituted an entirely sufficient and valuable consideration for the mortgage executed by Father Heideman upon his property.

In order to discharge the indebtedness resting upon the church the bishop placed a mortgage thereon. This was not necessary to the validity of the mortgage executed by Father Heideman, but certainly did not impair it. Appellant urges that the mortgage executed by Father Heideman was given merely as security against the mortgage made by the bishop upon the church, and that if the bishop is not called upon to pay said mortgage, then he will have no right to insist upon the security given him by Father Heideman.

There is in the answer of the bishop and of Father Heideman a statement that the mortgage executed by the latter was made to secure the bishop against the mortgage by him made upon the church. If Father Heideman should come forward and out of his own means pay off and discharge the mortgage resting upon the church, there might be some reason for the contention that the mortgage made by Father Heideman upon his own property should be postponed to the lien of appellee's judgment.

The present situation is that Father Heideman has not

discharged any portion of the indebtedness for which the mortgage upon the church was given; that such mortgage is scant security for the indebtedness represented by it, and that Father Heideman is insolvent.

Appellee urges also that the contributions were made by the parish in which the church is located, toward its erection, and that if the parishioners by further contribution shall discharge the mortgage on the church, then the bishop will have in equity no right to insist upon the mortgage given to him by Father Heideman. If the parishioners see fit to pay off the mortgage given by Father Heideman, they have the right so to do, and in that case the lien of appellee's judgment will not only be operative but valuable. If the parishioners see fit to pay off the incumbrance made by the bishop upon the church, they will not only be doing what they have a right to, satisfying the bishop's debt, but not contributing anything to appellee, nor giving her any right in a court of equity to insist that her judgment lien shall take precedence over the mortgage which the bishop holds.

Appellee in her cross-bill called for an answer under oath by the bishop and Father Heideman, and they have so answered. Such answers unequivocally deny any combination or confederation against appellee, as well as any and all attempt to secrete anything from her, or put anything out of the reach of her judgment. Nor is there in the entire record of this case anything which shows that the bishop in obtaining his mortgage upon Father Heideman's property did anything that he was not fully warranted by the law in doing.

True it is that the mortgage made by Father Heideman was executed five days after appellee commenced her suit against the latter. The bishop under oath denies that at the time of such execution he had any notice that she had begun such suit, and states that the mortgage was made in pursuance of a previous arrangement, and without any reference to any claim of or indebtedness to appellee. If it were the case that the bishop and Father Heideman, being

informed of the commencement of appellee's suit, had, for the purpose of giving a preference to the bishop—that is, of securing the payment of Father Heideman's obligation to the latter in preference to paying appellee—had the mortgage to the bishop executed, it would not have given appellee a right to have the lien of such mortgage postponed to that of her judgment.    Father Heideman had a right at the time he executed this mortgage to prefer one creditor over another.    He seemed to have preferred to secure the bishop, and thus get rid of his obligation to the parties who held the mechanics' liens, rather than to pay appellee.    This was his right, as it was the right of appellee, if she could, to induce him to prefer her and give her a mortgage instead of the bishop.    The bishop in obtaining his mortgage and appellee in securing a judgment as soon as possible, each proceeding under their lawful rights.    In a pecuniary point of view the bishop has been more successful than appellee, but he has not proceeded any more lawfully.

The decree of the Circuit Court foreclosing the mortgage made by Father Heideman to the bishop is affirmed.    So much of the decree as postpones the lien of such mortgage to that of the judgment of appellee is reversed.    And the cross-bill of appellee is dismissed.    Affirmed in part and reversed in part.