# HAROLD E. JULIEN v. SPRING LAKE PARK AGENCY, INC., AND OTHERS, OHIO FARMERS INSURANCE COMPANY, APPELLANT.

166 N. W. (2d) 355.

March 21, 1969—No. 41199.

*Carroll, Cronan, Roth & Austin* and *Thomas A. Foster,* for appellant.

*Wargo & Barna* and *Robert C. Hynes,* for plaintiff respondent.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for defendant respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This is an action by a contractor against an insurance agency and an insurance company to recover for so-called builder's risk insurance on an oral binder by the agency which was never communicated to the company. The trial court sitting without a jury awarded damages to the plaintiff and denied the company's claim for indemnity against the agency.

The issues are (1) whether at the time of the oral binder the agency designated a specific company to write the insurance; and (2) whether the agency's failure to advise the company of its exposure rendered it liable to the company for the ensuing loss.

Plaintiff is a contractor who built a number of houses in the Fridley area in 1964 and 1965. As houses were constructed, plaintiff secured builder's risk policies from defendant Spring Lake Park Agency, Inc., hereafter referred to as the Agency. The policies were for fire and extended coverage during the relatively brief period of time that plaintiff had the homes under construction. The Ohio Farmers Insurance Company, hereafter referred to as Ohio, was one of four or five insurers through whom the Agency wrote this type of insurance. It was the practice for the Agency to retain the policies and bill plaintiff. Consequently, plaintiff had no occasion to know specifically what company had assumed the risk.

Between April 1964 and January 1965, eight such policies had been written by Ohio on buildings being constructed by plaintiff. No builder's risk policies were written for plaintiff by any other company.

On January 11, 1965, plaintiff conferred with the president of the Agency, one Paul Bengston, and asked that a policy on property at 1501 County Road H be canceled and that two new builder's risk policies be written for houses under construction at 7763 Quincy Street Northeast and 7750 Van Buren Street Northeast. Plaintiff said he wanted the "same coverage" as that on the house at 7730 Van Buren Street Northeast, which was insured for $12,000 by Ohio. Bengston told plaintiff he was covered. No specific company was mentioned, and Bengston did not at that time know what company had the insurance on the property at 7730 Van Buren. Because he did not

handle plaintiff's account personally, he made a memo and gave it to one of his agents to secure the policies. That memo is in the following cryptic form:

"1501 - Co. Rd. - H -
Julien
Canc - & Bill - Nov.
Jan. 11 - 7763 Quincy NE.
7750 Van Buren -
Same as 7730 -"

The agent to whom the matter was assigned secured from Ohio a builder's risk policy for the property at 7750 Van Buren, but for some inexplicable reason no action was taken with respect to the property at 7763 Quincy Street.

Between January 11, 1965, and the date of the loss, Ohio wrote two more builder's risk policies for plaintiff, covering houses at 2529 Long Lake Road and 5198 Long View.

On May 6, 1965, the Quincy Street property was struck by a tornado, causing damage in the sum of $8,600. This litigation followed.

Bengston testified that although he didn't know what company had been writing plaintiff's builder's risk policies when he made the oral binder on January 11, 1965, it was his conscious intention to accept coverage through whatever company had written plaintiff's other business. Bengston testified this was Ohio.

The branch manager of Ohio testified that if the Agency had notified Ohio of the request for coverage at 7763 Quincy, Ohio would have issued a policy of $12,000 for builder's risk insurance. The fact that there was a delay of nearly 5 months did not increase the risk of loss, he stated. However, he pointed out that insurance companies understandably must know what their exposure is at any given time without waiting for a loss to establish that fact.

Because the period of coverage was brief and the premiums relatively small, ranging from $25 to $50, the risk was not one as to which Ohio required an investigation before making an oral binder effective.

The trial court held that in accepting coverage the Agency was acting within the scope of the authority granted by Ohio and that Ohio was therefore liable. The court also found that Ohio suffered no loss from the failure of the Agency to report the coverage. It denied indemnity. We affirm.

■ In Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28, we gave effect to an oral binder made by an agent where no policy was written and the loss occurred about 6 months after the binder. We held the company liable. In so doing we noted, however, that no contract is created until a company is designated by the agent.

While the question is close, we are of the opinion that when the Agency specified that the policy on 7763 Quincy was to be the same as that on 7730 Van Buren, and the president of the Agency intended that the same company write the policy though he was unaware of its identity, there was a sufficient designation to satisfy the rule. Elliott v. Standard Acc. Ins. Co. 92 N. H. 505, 511, 33 A. (2d) 562, 567.

As we have indicated, unlike applications for policies which require investigation, those involving builder's risk policies are handled informally and agents have considerable latitude in granting oral binders. Reishus v. Implement Dealers Mutual Ins. Co. (N. D.) 118 N. W. (2d) 673, 681. We agree with Judge Nordbye's conclusion in Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co. (8 Cir.) 61 F. (2d) 264, 272, 92 A. L. R. 218, 232, quoted by this court in Nehring v. Bast, 258 Minn. 193, 203, 103 N. W. (2d) 368, 376, 85 A. L. R. (2d) 1400:

"* * * The exigencies of modern business require and justify reliance on oral agreements of insurance entered into by agents acting with apparent authority."

■ With respect to the issue of indemnity, the trial court was correct in holding that Ohio has failed to show its loss resulted from any dereliction on the part of the Agency. It is conceded that the Agency had the power to bind the company, and the branch manager of Ohio acknowledged that the policy would have been written had

the information been promptly transmitted. No claim is made that the delay increased the risk of loss or caused Ohio damage. Since under these circumstances the Agency performed a function it was authorized to carry out, we hold that no damage attributable to it was realized by Ohio because of its failure to advise Ohio of the risk before the loss occurred.

Affirmed.