INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellee, *v.* J. L. HUBBARD COMPANY, Defendant-Appellant.

(No. 12150;

Fourth District—October 24, 1974.

TRAPP, P. J., dissenting in part.

Ryan and Cini, Ltd., of Mattoon (Willis P. Ryan, of counsel), for appellant.

Armstrong, Winters, Prince, Tenney & Featherstun, of Decatur (Roswell C. Prince, of counsel), for appellee.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Plaintiff, Insurance Company of North America, issued a homeowners' policy, effective March 15, 1967, to Frank and Margaret Hubbard (hereinafter the insured) through its Decatur agent, the defendant, J. L. Hubbard Company, who has no relationship to the insured. In addition to other coverage, the policy included a valuable personal articles endorsement on fine arts owned by the insured. The policy was to expire by its own terms on March 15, 1970. The insured suffered a loss by burglary in March, 1971.

Prior to expiration, communication concerning renewal between plaintiff and the defendant indicated that plaintiff desired two policies, one covering the dwelling and the other the valuable personal articles then covered by endorsements; and plaintiff also requested updating and a revised schedule of articles to be insured. The defendant discussed this with the insured in January, 1970, and after March 15, 1970; however, the information was not obtained.

On March 12, 1970, the defendant's manager, Mr. Hughes, notified the insured that coverage was bound and that a new policy would be issued as soon as Karl Peterson, an employee and officer of the defendant, had completed the review of the schedule and had updated it in accordance with the insured's wishes. On the same date, the manager wrote to plaintiff noting coverage of the old policy would expire March 15, 1970, and that the defendant wanted to be sure there was binder coverage on the policy pending the submission by the defendant of the updated renewal information.

On April 10, 1970, the defendant again wrote the insured that the coverage was bound under the policy and that a new policy would be issued as soon as a review of the schedule had been made and updated. A copy of this letter was forwarded to plaintiff requesting that the homeowners' policy be issued without the valuable personal articles endorsement stating that the defendant had been unable to meet with the insured to audit all of the valuable items to be covered, and noting that a separate policy was to be issued. The postscript asked whether or not the homeowners' policy could be released without the valuable personal articles endorsement. A copy of this letter and that postscript was sent back to the defendant by plaintiff stating: "Since it has been 2 years since coverage was increased, please advise if it is acceptable to increase the renewal to $90,000." The $90,000 referred to insurance on the dwelling which had been $65,000 in the original policy and was to cover increased construction costs in event of necessary replacement. The evidence of plaintiff indicated that settling claims for less than replacement costs caused real problems in balancing out claim.

The defendant then responded to plaintiff by letter dated May 1, 1970, stating:

"I think that $90,000 is a little rich. Go ahead and renew it at $80,000, and I'll discuss the increase with the insured."

Plaintiff replied by memo dated May 7, 1970, as follows:

"We have your note requesting that we renew this policy for $80,000. We had a riplacement (*sic*) cost inspection made of this dwelling by our company engineers in 1968. At that time the replacement cost was computed at $93,700 and we agreed to increase the coverage to $80,000.

"However, since that time construction costs have increased a bare minimum of 10%, which would put replacement cost at about $103,000.

"Normally, we require 100% of replacement cost on all of these high valued homes. We are making an exception in this instance *but do not feel we can write the coverage for less than $90,000*. Your cooperation in giving us the go ahead at this figure will be appreciated." (Emphasis supplied).

This memo was signed by Jim Daily. The Peoria office of plaintiff received no reply concerning this memo. Therefore, on June 22, 1970, Daily sent a memo to the defendant, attention Karl Peterson, which stated:

"As per previous correspondence, please advise if we are to proceed with renewal for $90,000. If we do not hear from you by 7/2/70 we will assume coverage is being placed elsewhere and the binder will terminate."

Daily selected July 2, 1970, as the termination date because this was in accordance with standard company practice to allow 10 days notice of termination of a binder on a policy. Daily testified he meant the memo of June 22, 1970, to apply to all coverage under the old policy.

The defendant's manager, Hughes, testified that the words "Karl" and "Linda" written at the top of the memo from Daily dated June 22, 1970, were in Hughes' own handwriting. Hughes was routing that memo to his secretary and the account executive for the insured. Hughes testified that he could not say what happened to that memo after he initialed it and passed it on. He first found the memo in the defendant's commercial file after the loss in March, 1971. While testifying as witness for plaintiff, Hughes stated: "I did not follow the underwriter's instructions to terminate this policy or binder. To my knowledge no one in the agency followed the underwriter's instructions to terminate this binder."

Nothing more was done concerning this policy after the filing of the memo in the commercial folder. No schedules were completed by either

the defendant or the insured as had been contemplated and no request of plaintiff for renewal at any amount made.

On or about March 19 or 20, 1971, the insured returned to his home to find it had been burglarized. Some of the items supposedly covered by the policy in question were among the missing articles. The value of the stolen property was set at $86,060. The insured notified the defendant immediately of his loss.

On the first working day following the loss, Hughes contacted a Mr. Humphrey and a Mr. Davis of plaintiff's Peoria office. Hughes had been unable to locate the agent's copy of the renewal policy. Humphrey then checked the Peoria office's files and found their file copy of the June 22, 1970, memo. Wanting to have insurance in effect for future contingencies, a new binder was written providing for $90,000 coverage on the dwelling and for $150,000 coverage on fine arts. This policy was typed about May 12, 1971, but back-dated to be effective March 22, 1971. It included updated information that had been requested but not received during the first half of 1970.

Plaintiff refused to pay the loss sustained by the insured in the burglary. As a result of this refusal, the insured filed suit against plaintiff in the circuit court of Macon County, alleging that an insurance contract was in force and effect between the insured and plaintiff on the date of the loss, and that the policy covered this valuable personal property. Plaintiff made a demand on the defendant to defend the suit brought by insured and to pay any judgment that might arise from that suit. The defendant refused to comply with this demand.

After receiving the defendant's refusal, plaintiff brought this action under section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57.1), for a declaratory judgment that would require the defendant to defend the action brought by the insured against plaintiff, and to indemnify plaintiff for any liability and expenses plaintiff might incur in the insured's suit. Plaintiff alleges that the defendant violated the agency agreement between the defendant and plaintiff in not following the instructions of plaintiff to provide information necessary to renew the insured's policy, and also failed to notify the insured that the insurance binder issued by the defendant was terminated July 2, 1970.

The trial court made oral findings that the original policy with its endorsements terminated on July 2, 1970, and that the policy did not cover the loss sustained by the insured in March, 1971. A written judgment of October 11, 1972, in the declaratory judgment action found that as between plaintiff and defendant, the liability for any payment for the loss was with the defendant. The trial court then ordered defendant to indemnify plaintiff for any judgments, interest, costs, claims and ex-

penses, including attorney's fees, that might arise out of, or be incurred in defending the pending action by the insured.

Each party cited *Continental Insurance Co. v. Clark* (1904), 126, 100 N.W. 524; *Altrocchi v. Hammond*, 17 Ill.App.2d 192, 149 N.E.2d 646, Annot., 35 A.L.R.3d 792 (1971), and agrees upon the statement of the law that if an insurance company would have accepted a risk had it been requested by its agent to do so, and the only inadvertence of the agent is failure to advise the company of the issuance of a policy or binder, the agent is generally liable only for nominal damages, *but* where the company is offered the risk, refuses to accept it, and directs the agent to cancel and the agent fails to do so, the agent, not the company, is liable for the loss under the policy or binder. They disagree, however, as to its application to these facts.

The defendant appeals this order contending that misplacement of the June 22, 1970, memo was not the proximate cause of the loss that plaintiff must pay, and therefore it is not entitled to indemnity. Additionally, defendant contends that the Illinois law on the subject provides no right of indemnity for any costs, claims and expenses, including attorney's fees, in defense of the insured's suit against plaintiff.

Plaintiff's position is that this is a case where a principal has been exposed to a loss and litigation expenses because its agent failed to exercise reasonable diligence in the transaction of the principal's business entrusted to the agent. Additionally, it contends that the agency failed to follow the reasonable and lawful instructions given it by the principal to terminate an insurance binder on a risk the principal had refused to accept, and that as the result of the failure of defendant to promptly perform its duties and follow instructions, the existence of possible liability on behalf of the principal was not discovered until a material loss occurred.

Defendant argues that plaintiff was not prejudiced by the defendant's failure to notify the insured of termination of the binder, since the loss plaintiff will have to pay is the same now as it would have been had the binder been completed at $90,000 in accordance with plaintiff's wishes. Therefore, defendant reasons its acts in failing to terminate or update the policy and increase the coverage to $90,000 were not the proximate cause of the loss to the company, and that the proximate cause of the loss was the burglarizing of the home of the insured. Plaintiff, to the contrary, contends that the loss is not one which it would have had to sustain if the defendant had followed its instructions by cancelling the binder, *i.e.*, that the defendant's omissions were the proximate cause of the loss.

The defendant's argument is grounded on the doctrine expressed in the line of cases holding that a failure to inform the insurer of an outstanding

binder results in only nominal damages against the agent if the binder covers insurance of the type the insurer will cover and no prejudice will result to the insurer. Annot., 35 A.L.R.3d 821 (1971).

Defendant first argues that plaintiff was not prejudiced by the delay of the knowledge that plaintiff was on the risk, contending that the risk was acceptable to plaintiff as evidenced by the issuance of a new policy covering like risks. The defendant further contends that the fact it mislaid the memo of June 22, 1970, was not the proximate cause of the loss. However, it is to be noted that the policy was written by plaintiff after the loss with coverage to start on March 22, 1971, and was written in accordance with and consistent to its repeated demands for coverage in the amount of $90,000 made before the loss. At no time after the policy expired on March 15, 1970, did plaintiff indicate it would accept the risk in the first instance for a lesser amount. Plaintiff accepted the risk on March 22, 1971, only after the terms as modified and proscribed by plaintiff twice before July 2, 1970, were agreed to and accepted by the defendant and the insured.

The authorities relied upon by the defendant denying indemnity, *Julien v. Spring Lake Park Agency, Inc.* (1969), 283 Minn. 101, 166 N.W.2d 355, Annot., 35 A.L.R.3d 815; *Lumbermens Mutual Insurance Co. v. Bowman* (10 Cir. 1963), 313 F.2d 381, and *Virginia Surety Co. v. Lee* (1964), 55 Tenn. App. 501, 402 S.W.2d 714, were cases where the insurance companies involved were not advised that policies or binders had been issued; however, the evidence in each case indicated had the companies been advised, they would have authorized the policies. In the instant case, plaintiff knew of the binder, asked for renewal at the higher amount, and fixed a definite date for the binder to terminate prior to the loss in question. Other cases cited by the defendant denying indemnity, as where the wrong type of policy was issued, failure to include all property involved, or that the premises were unoccupied, stressed and emphasized that the company was not drawn into a risk that it refused to insure. Plaintiff had refused the risk offered, explained its reason of increased replacement costs, and to now compel it to pay the loss under this binder would, in effect, draw it into a contract to insure a risk that it had refused to accept. Plaintiff's issuing the new policy at $90,000 after the loss was not evidence that the company would have accepted and assumed the risk on a policy with a lesser amount—as the defendant contends—it was the issuance of a policy that plaintiff had consistently proscribed and one the defendant had failed to write previously pursuant to plaintiff's instructions. The evidence clearly shows that plaintiff could not, and did not, deal directly with the insured under its past practice and custom with the defendant. Plaintiff was dependent upon the de-

fendant to deal with the insured in either getting the dwelling coverage at $90,000, or in cancelling the binder. The defendant did neither, but failed to follow and then misplaced the directions received from plaintiff. The defendant did not comply with the instructions in writing a policy for $90,000 until after the loss occurred.

The defendant contends that there was no act or omission on its part that increased plaintiff's risk by the defendant's failure to follow up on the memo of June 22; yet, the defendant's failure to cancel the binder in fact resulted in an action against plaintiff by the insured on a policy that plaintiff had refused—an action to which both parties agree plaintiff had no defense, aside from a contest as to the amount of the loss.

Plaintiff did show, by its subsequent action, that it would accept the type of risk involved, but indeed, it put a condition on its acceptance of the same and that was a minimum dollar amount. Insurance companies should have as much leeway in fixing minimum value coverage of policies written as they do to decide what coverage, type, or risk they will assume, with reasonable expectation that their agents will follow the instructions communicated to them, or be responsible for any losses occasioned by failure to do so.

■■ The defendant strenuously contends that the reasoning of the Minnesota court in *Julien* should be followed; however, even though the facts may have been similar, there remained the distinct difference that the company in that case had never been notified that a binder was outstanding, nor had the company been given any opportunity to communicate any limitation or instructions to the defendant on the type or amount of the risk. Under such facts, the defendant could reasonably assume that upon notice to the company of the binder, it would be honored even though there was considerable delay in notifying the company that the binder had been issued. These are not the facts of the instant case. The defendant knew, as it had been twice advised by the company, that the company would not accept this risk in the amount for which the binder had been issued by the defendant. The defendant, under these facts, could not reasonably have been led to believe that the binder it issued would be honored by the company after the cutoff date of July 2, 1970. As between the two parties, the one who made it possible to occasion the loss must sustain that loss. The party that occasioned the loss in this case was the defendant. If an insurance agent negligently or wilfully fails to carry out the peremptory instructions of his principal, the insurer, he may be found liable to the insurer for the amount which it is required to pay under the policy in settlement of a loss. *Germania Fire Ins. Co. v. Harraden*, 90 Ill.App. 250; Annot., 35 A.L.R.3d 792, 797 (1971); 22 I.L.P. Insurance, § 75 (1956).

The appellate court recently discussed the liabilities of an insurance agent to its principal-insurer in *Security Insurance Co. v. Mato*, 13 Ill.App.3d 11, 298 N.E.2d 725. The facts of the case are very similar to the one at bar. The insurer had filed a declaratory judgment suit to determine whether it was obligated to provide coverage to two injured persons. It filed a third-party complaint against its agent, based on breaches of the agent's duties to its principal and on negligence for indemnity in the event that the insurer would be found liable to the injured persons. In remanding the third-party complaint for trial, the court stated as follows at page 18:

> "It is well established that a principal has a right of action against its agent for loss or damage resulting from the agent's breach of duty or wrongful act. (*Thorp v. Gosselin Hotel Co.* (1965), 65 Ill.App.2d 107, 111), and that if an agent disobeys the reasonable and lawful instructions of the principal, causing loss or injury to the principal, the agent is liable for such damages. (*Spalding v. Heideman* (1901), 96 Ill.App. 405, 408; *Johnson v. Illini Mut. Ins. Co.* (1958), 18 Ill.App.2d 211, 216. See also *Manufacturers Cas. Ins. Co. v. Martin-Lebreton Ins.* (5th Cir. 1957), 242 F.2d 951, 953, *cert. denied*, 355 U.S. 870, 2 L.Ed.2d 76, 78 S.Ct. 121; Annotation, 35 A.L.R.3d 907.)"

■■ Certainly, plaintiff's instructions to the defendant were reasonable under all the circumstances and although they were not wilfully disobeyed by the defendant, the instructions were not carried out by the defendant by reason of its omissions and fault with an ultimate resulting loss to plaintiff. Accordingly, we conclude that the trial court correctly entered its order of indemnity for the plaintiff for any losses by reason of judgments rendered against it on the policies.

■■ The next issue presented on this appeal is whether the court erred in ordering the defendant to indemnify plaintiff for any costs, claims and expenses, including attorney fees (litigation expenses), in addition to any judgments and interest arising out of plaintiff's defense of the action pending in the trial court brought by the insured against plaintiff for loss suffered under the binders. These litigation expenses do not include those involved in this declaratory judgment suit. To support its contention that such expenses are recoverable, plaintiff relies on the language of the supreme court in *Ritter v. Ritter*, 381 Ill. 549, 46 N.E.2d 41, where the court in recognizing the well established rule that such litigation expenses are not allowable to the successful party in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing them, pointed out an exception to this general rule where the wrongful acts of a defendant involve the plaintiff in litigation with third parties,

or place him in such relation with others as to make it necessary to incur expenses to protect his interest. Plaintiff argues that the case before us comes within this statement and exception to the general rule. It further takes issue with the soundness of the holding of the appellate court in *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 5 Ill.App.3d 450, 283 N.E.2d 517, denying attorney fees in third-party litigation which case was cited and relied upon by the defendant to support its contention that such expenses are not allowable.

■■ Since oral argument by the parties, the Illinois Supreme Court, at 55 Ill.2d 356, 303 N.E.2d 382, affirmed *Reese*, but did not comment on the litigation expense issue. Whether or not we now conclude that since the supreme court affirmed *Reese* in its entirety it is dispositive of the question of the right to litigation expenses in the case before us and not allowable as an exception to the stated general rule, there are other sound reasons for so holding—first, the cases relied upon by plaintiff (including those cited in *Ritter* as the basis for the court's statement of the exception to the general rule disallowing litigation expenses) were limited to factual situations where a party was forced to preserve property rights in real estate due to the wrongful acts of another which caused litigation expenses against third parties; secondly, the wrongful conduct of the defendants in these cases was characterized as either wilful, wanton, malicious, oppressive, or at least as being of an active tortious nature. This is the root of all the cases where such expenses have been allowed under the exception beginning in 1853 with the case of *Himes v. Keighblingher*, 14 Ill. 469, where the court stressed the fact that the complaint did not rely on a mere non-feasance or neglect on the part of the defendant but was an action for a malfeasance—an affirmative wrongful act. The defendant's conduct cannot be so characterized. The defendant's conduct was that of an omission—a misfeasance at the most—and it could not be classed as either wilful, malicious, or actively tortious. Further, the action grows out of a contractual insurance agency relationship and not one involving the protection of real property rights. We agree with our colleagues of the appellate court when they pointed out in denying attorney fees in alienation of affection suits in *Kniznik v. Quick*, 130 Ill.App.2d 273, 264 N.E.2d 707, that the exceptions to the general rule that attorney fees and ordinary expenses of litigation are not allowable to the successful party should be narrowly construed and limited to the facts of these earlier cases and not extended.

For the reasons stated herein, the judgment of the trial court ordering indemnity to plaintiff by the defendant for any judgments and interest arising out of the action pending in the trial court brought by the insured

as plaintiffs against defendant is affirmed; and that part of said judgment ordering indemnity to plaintiff by the defendant for costs, claims and expenses including attorney fees is reversed, and the cause is remanded to the circuit court of Macon County with directions to enter judgment consistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

SIMKINS, J., concurs.

Mr. PRESIDING JUSTICE TRAPP dissenting in part:

I dissent from that portion of the opinion which reverses the award of costs of litigation and attorney's fees by the trial court.

It is to be carefully noted that the attorney's fees and expenses here concerned are only those arising from the litigation between the principal, as an insurer, and the insured. It is thus of a different category than that found in the rule of *Ritter v. Ritter*, 381 Ill. 549, 46 N.E.2d 41, and *House of Vision, Inc. v. Hiyane*, 42 Ill.2d 45, 245 N.E.2d 468, which concerned the effort of the successful party to litigation to recover attorney's fees from the unsuccessful party to that litigation.

The principle opinion relies upon *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 5 Ill.App.3d 450. 283 N.E.2d 517, *affirmed*, 55 Ill.2d 356, 303 N.E.2d 382, which held that litigation expenses are recoverable only when provided by the specific terms of a written contract of indemnity.

While the operative language in the complaint and in the order of the trial court is that defendant shall "indemnify" the plaintiff, it seems clear that the liability is to pay damages suffered by the principal for breach of contract rather than for indemnity. As stated in Black's Law Dictionary, indemnity arises through a collateral contract by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forebearance on the part of one of the parties, or of some third person.

Apart from specific contract, an obligation to indemnify arises only in the category of cases where the courts find "implied indemnity" as an exception to the rule, that there is no contribution among joint tort-feasors. The opinion in *Gulf, Mobile & Ohio R.R. Co. v. Arthur Dixon Transfer Co.*, 343 Ill.App.2d 148, 98 N.E.2d 783, discusses "implied indemnity" in the context that the indemnitee has been negligent to a degree sufficient to create legal liability. By reason of such liability the indemnitee is already subject to a suit by the injured party and no new burden of litigation costs is created by the acts of the indemnitor. In *Chicago & Illinois Midland Ry. Co. v. Evans Construction Co.*, 32 Ill.2d

600, 208 N.E.2d 573, the court stated that it was necessary to draw a qualitative distinction between the indemnitee, whose negligence is passive, and an indemnitor, whose negligence is active.

The cited *Reese* explicitly concerns indemnity between joint tortfeasors. Here, the plaintiff seeks to recover fees and costs of litigation which arise from a breach of contract duty by the agent, and he is not seeking an "implied indemnity" as one liable for negligence as a joint tort-feasor.

Restatement (Second) of Agency, § 399 (1958), sets forth the remedies of the principal where the agent has violated his duties. The Comment directed to clause (h) says:

> "If an action is brought against the principal by third persons because of conduct by an agent or a subagent for which, as between the principal and the agent, the agent is responsible, the principal can, under the provisions of many modern statutes, cause the agent to be made a party to the action. Apart from statute, in such cases, if the principal notifies the agent to defend and the agent fails to defend, the principal is entitled to expenses thereafter incurred by him in a reasonable defense or compromise of the action."

Such statement receives some recognition in *Ritter v. Ritter*, 381 Ill. 549, 554-55, 46 N.E.2d 41, 44, wherein the court said:

> "While it is recognized that where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others, there may be a recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation (*Choukas v. Severyns*, [3 Wash.2d 71, 99 P.2d 942, (1940)], yet the rule is equally well established that where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action." * * *

That opinion cited *Philpot v. Taylor*, 75 Ill. 309; *McEwen v. Kerfoot*, 37 Ill. 530, and *Himes v. Keighblingher*, 14 Ill. 469, and distinguished them from those cases wherein the successful litigant sought to recover attorney's fees from his unsuccessful adversaries. In such cited cases, persons acting as agents wrongfully delivered instruments concerning real estate which the owner was required to defend against. Since such defenses prevailed, the damages sustained were substantially the costs of litigation. While not presently an issue here, it is apparent that in those cases where a principal successfully defends a claim made by a third

party because of the acts of the agent, the principal would not be able to recover from such agent the only substantial damages sustained, *i.e.*, attorney's fees and costs of litigation.

No significant reason is stated for distinguishing between actions upon rights under a contract and those actions necessary to protect rights in real estate. Such action may be equally necessary and equally substantial. That distinction is found as dicta in *Kniznik v. Quick*, 130 Ill.App.2d 273, 264 N.E.2d 707. That suit was for alienation of affections and the plaintiff sought attorney's fees incurred in his actions for divorce and child custody. The opinion speaks of a public policy found in "An Act relating to the damages recoverable in actions for alienation of affections" (Ill. Rev. Stat. 1971, ch. 68, pars. 34—37), expressly limiting damages recoverable in such actions. That Act excludes many elements of damages and forbids exemplary damages. Such opinion had no occasion to consider elements of damage for the violation of contract duties as an agent here at issue. Similarly, no substantial reason is stated for limiting the recovery of such legal expense to wilful or malicious acts of the agent.

The judgment of the trial court should be affirmed.