# SECURITY MUTUAL CASUALTY COMPANY v. DONALD LUTHI AND OTHERS.

226 N. W. 2d 878.

February 28, 1975—No. 44829.

*Dean K. Johnson,* for appellant.

*Dosland, Dosland, Nordhougen & Mickelberg* and *J. P. Dosland,* for respondents Luthi.

*Richards, Montgomery, Cobb & Bassford, Charles A. Bassford,* and *Jack A. Rosberg,* for respondents Vogt.

*Coulter, Nelson & Sullivan* and *Mark Sullivan,* for respondents Shidla.

Heard before Rogosheske, Todd, and Yetka, JJ., and considered and decided by the court en banc.

TODD, JUSTICE.

Security Mutual Casualty Company (Security Mutual) sought declaratory judgment that two insurance policies owned by defendant Luthi Aviation, Inc., did not afford coverage of an accident occurring on November 29, 1972, and that Security Mutual had no liability to parties damaged as a result of the accident. The trial court held the policies to be in full force and effect as to all claims arising out of the accident and awarded Luthi Aviation its legal fees incurred in defending the action. Security Mutual appeals from the judgment entered and from the order denying its blended post-trial motions. We affirm.

Security Mutual is a foreign corporation with its headquarters in Chicago, Illinois. Security Mutual writes aircraft liability and hull damage insurance policies in Minnesota and other states. Defendant Luthi Aviation is in the air transport business and on the day of the accident had its principal place of business in Moorhead, Minnesota. Defendant Donald G. Luthi was president and general manager of Luthi Aviation at the time of the airplane crash. As of November 29, 1972, Luthi Aviation had outstanding two policies of insurance with Security Mutual providing hull and liability coverage with respect to a number of planes owned and operated by Luthi Aviation.

On November 29, 1972, a Beechcraft twin-engine aircraft

owned by Luthi Aviation and operated by one of its pilots, Ronald Bestland, crashed in the Highland Park area of St. Paul, causing property damage to the homes of defendants Mr. and Mrs. Walter Vogt and Mr. and Mrs. Frank J. Shidla. The pilot and a passenger were killed.

The two policies contained the following clause (called the "pilot clause"):

"Item 5

"The Aircraft will be operated in flight only by the following pilot(s): Donald Luthi, or any other person holding a commercial license with a multi-engine and instrument rating who has *logged* 1,500 hours *total flying time* of which at least 500 hours having been in multi-engine aircraft and 50 hours in the model insured hereunder." (Italics supplied.)

The policies also contained the following exclusion:

"THIS POLICY DOES NOT APPLY:—
\* \* \* \* \*

(e) while the aircraft \* \* \* is being operated by any person other than the pilot(s) stated in Item 5 of the Declarations (other than taxying by certificated pilots or licensed mechanics) or is operated by any such person in violation of the terms and limitations of his Civil Aeronautics Administration Pilot's Certificate \* \* \*."

Following the accident, Luthi Aviation advised Security Mutual that pilot Bestland's flight record reflected a total flying time of 1,329.1 hours; that he had recorded multi-engine time of 425 hours; and that he had more than 50 hours' flying time in the plane in question. The last item is not in dispute. On the basis that the requirements of Item 5 of the policy had not been met, Security Mutual suspended its coverage as to the losses arising out of the November 29, 1972, accident and sought judicial confirmation of its position.

At trial, the major issue became one of contract interpretation. Defendants maintained that the term "total flying time"

was susceptible of two interpretations. By practice in the air industry, two different methods for computing flying time are used. The "time-in-service" method records time from the moment the plane's wheels leave the ground until they touch down again. The "block-to-block" method measures time from the moment the plane's wheels first move until they finally stop. The latter method includes taxiing time and other on-the-ground maneuvering. It was asserted that Bestland kept his log book time using the time-in-service method.[1] If he had recorded his time using the block-to-block method, he would have had well in excess of 1,500 hours' flying time.

Similarly, there was a dispute as to the meaning of the term "logged" as used in the pilot clause. Security Mutual maintained that "logged" meant "written down in a flight book." Since Bestland had written down 1,329.1 hours in his flight record book, Security Mutual contended Item 5 had not been satisfied. Defendants argued that "logged" meant "having flown or performed an act." Regardless of the number of hours Bestland wrote down, defendants maintained the real issue was the number of flight hours Bestland actually flew. Thus, the term "logged flying time" could mean either—(1) the number of hours written down in Bestland's flight book (i. e., 1,329.1), or (2) the number of hours actually flown by Bestland as measured by the block-to-block method.

The trial court found the terms "logged" and "flying time" ambiguous and that determination is sustained by the evidence. Since the contract was a product of the insurer's own draftmanship, the court interpreted the contract in the way more favorable to the insured. The block-to-block method was thus utilized in computing Bestland's "total flying time" for Item 5 purposes and the court found that Bestland had in excess of 1,500 hours'

---

[1] It is customary for pilots to keep a log book or flight record book in which they record their flights, type of aircraft flown, conditions encountered, and other pertinent data. These books are used when pilots attempt to qualify for higher aircraft ratings on the basis of time flown.

flying time and in excess of 500 hours in multi-engine aircraft. Since the trial court determined that Bestland had the required flying time under the policy, it was not necessary that he be scheduled as a named pilot.

The trial court also awarded Luthi Aviation $2,400 for legal fees incurred in defending the declaratory judgment action. The award was based on the provisions of Section II(e) of the aircraft liability policy which provided that the company shall—

"(e) pay all expenses incurred by the Company for investigation, adjustment and defense, and reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the Company's request."

The court reasoned that the defense of the declaratory judgment action was "at the Company's request."

On appeal Security Mutual contends that the trial court erred in allowing parol evidence to be taken for purposes of contradicting the clear meaning of the written contract and the unequivocal and unambiguous understanding of the parties to the contract; that the court further erred in finding the terms "logged" and "flying time" to be ambiguous by ignoring plaintiff's evidence regarding the allegedly clear understanding of the parties as to the interpretation of these terms; that the computation of Bestland's flying time was unsupported by the evidence and made without proper foundation; that defendants failed to meet their burden of proof with respect to said issue; and finally, that the trial court erred in allowing Luthi Aviation to recover attorneys fees.

■ Initially, it is necessary to determine if there exists an ambiguity under the terms of the policies. Item 5 quoted above is typed in on the face of the policies. The term "logged * * * total flying time" does not appear in the definition section of the policies. However, the term "in flight" is defined as follows:

"The aircraft shall be deemed to be in flight from the time the aircraft moves forward in taking off or in attempting to take

off for air transit, while in the air and until the aircraft comes to rest after landing or, the landing run having been safely completed, power is applied for taxying. A rotorcraft shall be deemed to be in flight when the rotors are in motion."

Further, the aircraft hull policy defines the term "taxying" as follows:

" 'Taxying' shall mean while the aircraft is moving under its own power or momentum generated thereby other than in flight as defined, but in the case of water alighting aircraft 'Taxying' shall be deemed to mean while the aircraft is afloat and is not 'In Flight' or 'Moored.' "

The reasonable interpretation of these sections indicates that "in flight time" was distinguished from "taxiing time", which is the distinction between the "block-to-block" method of computation and the "time-in-service" method of computation. Despite the existence of these definitions in the policy, the insurance company did not define its coverage by reference to these terms. Therefore, we hold that a fair reading of the policy does give rise to ambiguity and the trial court was correct in admitting parol evidence to aid in the process of contract interpretation. The trial court properly heard the testimony relating to custom and usage in the air industry and the testimony as to the conduct and understanding of the parties.

Defendants' evidence established that two methods for computing flying time in the air industry were customarily used, the time-in-service method and the block-to-block method. The evidence substantiates the court's finding that Bestland recorded his flight time using the time-in-service method and that he did not include taxiing time as permitted under the block-to-block method. On the basis of expert testimony, the court concluded that, using the block-to-block method, Bestland had sufficient hours for Item 5 purposes and, therefore, the insurance coverage was in effect. We conclude from our examination of the record

that such a finding is adequately supported, and it will not be disturbed on appeal.

■ Security Mutual further contends that, even if Bestland was qualified by use of the block-to-block method, the custom and usage of the parties militated against such an interpretation of the policy term. It contends that the conduct of the parties provides the court with persuasive evidence of the policy's true meaning. It is undisputed that Donald Luthi, the president of Luthi Aviation, from time to time sought to specifically list under the policy certain pilots who did not meet the standards of qualification required by Item 5. Security Mutual asserts that in reporting these pilots' times, Luthi relied solely on the times recorded in their flight record books and that this procedure reflected the understanding of the parties as to the meaning of the policy term. Plaintiff further contends that Donald Luthi's action after the accident, in reporting his pilot's flight time, indicates clearly that he was relying on Bestland's flight record in interpreting the meaning of Item 5. While it is generally true that the unequivocal understanding of the parties as shown by their conduct will furnish the court with persuasive evidence of a term's meaning,[2] the conduct must be of such a nature as to permit but one conclusion. Moreover, to imply meaning from conduct, the acting party must have placed some significance on his conduct in relation to the contract term. In the instant case, Luthi's prior reliance on the figures written down in the flight record books does not compel the conclusion that he interpreted the term "logged flying time" to mean simply the time written down by his pilots. Prior to this litigation, no real importance had been attached to the exactness of the figures and Luthi was not reflecting his interpretation of the term in reporting to Security Mutual. It was only after the qualifications of Bestland were called into question that Luthi first had reason to examine Best-

---

[2] Donnay v. Boulware, 275 Minn. 37, 144 N. W. 2d 711 (1966); Koch v. Han-Shire Investments, Inc. 273 Minn. 155, 140 N. W. 2d 55 (1966).

land's flight record or to consider the meaning of the term "logged flying time." It is attaching too much important to the ministerial act of reporting flight times to view such conduct as representative of the parties' interpretation of an ambiguous contract term. In point of fact, Luthi's conduct did not carry with it any significance in relation to the present litigation. Thus, the conduct of the parties does not conclusively erase the ambiguity of the policy term.

Further, the testimony of Mr. Luthi regarding his call to Security Mutual following the accident indicates his belief that he anticipated litigation and expected coverage under the policy. Such testimony is inconsistent with Security Mutual's claim regarding Luthi's intent to be bound by the notations in Bestland's log book.[3]

■ The trial court in its findings and accompanying memorandum concluded that because of the ambiguity in the policy term it was proper for the court to adopt the interpretation more favorable to the party not drafting the instrument. "Where the provisions of a contract [of insurance] are susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." Struble v. Occidental Life Ins. Co. 265 Minn. 26, 36, 120 N. W. 2d 609, 616 (1963). Our view of the evidence indicates that the trial court was justified in finding the term "logged flying time" to be ambiguous and in concluding that Bestland was qualified under the policy.

■ After ruling that the insurance policies were in full force and effect as to claims arising out of the accident of November 29, 1972, the trial court awarded Luthi Aviation $2,400 as reimbursement for attorneys fees incurred in defending the declara-

---

[3] If Item 5 of the policy had been limited to time-in-service hours and the evidence had disclosed that the pilot was recording his time on a block-to-block method, one would be strained to conclude that the insurance company would advocate a position that it was bound by such entries.

tory judgment action. The trial court based the award on the provisions of Section II(e) of the insurance policy, quoted above. The trial court reasoned that the defense of the declaratory judgment action was "at the Company's request" and thus Luthi was entitled to reimbursement for its attorneys fees.

The issue presented is one of first impression in this court. We have considered the question of attorneys fees in declaratory judgment actions on four occasions in recent years,[4] but in none of the cases was an insurance policy provision involved in the decision. In other jurisdictions, however, courts have awarded attorneys fees in situations virtually identical to the case at bar. In Occidental Fire & Cas. Co. v. Cook, 92 Idaho 7, 435 P. 2d 364 (1967), the insurance company brought a declaratory judgment action against its insured to have a policy declared void. The trial court found the policy to be in effect and awarded the insured his legal fees incurred in defending the action. The Idaho Supreme Court, considering a provision in the insurance policy identical to the one in this case, affirmed the award of legal fees, stating:

"* * * The fact that this is a declaratory judgment action should have no effect on the award of 'reasonable expenses' to the insured. [The insured's] rights are being determined in this cause and he is required to defend. Appellant Company cannot avoid its responsibility under Section II(e) of the insuring agreements, on the ground that the action is for declaratory judgment relief, when the effect upon the insured is as burdensome in its consequences as any other type of legal action." 92 Idaho 11, 435 P. 2d 368.

Similarly, in Standard Acc. Ins. Co. of Detroit v. Hull, 91 F.

---

[4] Morrison v. Swenson, 274 Minn. 127, 142 N. W. 2d 640 (1966); Abbey v. Farmers Ins. Exchange, 281 Minn. 113, 160 N. W. 2d 709 (1968); Olsen v. Preferred Risk Mutual Ins. Co. 284 Minn. 498, 170 N. W. 2d 581 (1969); Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co. 285 Minn. 264, 173 N. W. 2d 9 (1969).

Supp. 65 (D. C. Cal. 1950), the court awarded legal fees to the insured based on the same policy provision as in this case. The insured was required to defend a declaratory judgment action brought by the insurer, prompting the court to ask (91 F. Supp. 68):

"* * * Do the fees of attorneys for Hull and Berry constitute reasonable expenses, 'incurred at the Company's request' by the insured, in view of (1) The act of the Company in filing action for declaratory relief, naming Hull and Berry as defendants, and causing them to be served with process; (2) The prayer of plaintiff's complaint, not merely *requesting* but *requiring* defendants to appear and set up their claim.

"Our answer is yes. The language of the plaintiff's agreement is clear and the record shows Hull and Berry employed attorneys and incurred obligations for attorney's fees herein."

But see, Milwaukee Mechanics Ins. Co. v. Davis, 198 F. 2d 441 (5 Cir. 1952).

The policy reasoning in support of the position that legal fees should be awarded the insured is expressed in 7A Appleman, Insurance Law and Practice, § 4691, p. 512:

"Where an insurer failed to defend until after an adverse decision in a declaratory judgment action instituted by it, such insurer was held not liable to pay the attorneys' fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer. But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer,

at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. Other courts have refused to impose such a burden upon the insured."

We find ourselves in accord with the cited authorities that speak in terms of the burden on the insured. To deny an insured the legal fees incurred in establishing coverage would work a substantial hardship in many instances. The insured would be compelled to bear litigation costs in situations where he contracted in order to avoid just such an expense. We hold, as did the trial court, that Luthi Aviation may recover its attorneys fees incurred in defending the declaratory judgment action as "expenses incurred at the Company's request."

Affirmed.