**ST. PAUL SCHOOL DISTRICT NO. 625, et al., Respondents,**

v.

**COLUMBIA TRANSIT CORPORATION, Defendant,**

**The Home Indemnity Company, Appellant,**

**The Anderson Agency, Defendant,**

**The St. Paul Companies, Respondent.**

No. 81–359.

Supreme Court of Minnesota.

July 2, 1982.

Maun, Green, Hayes, Simon, Johanneson & Brehl, Richard T. McHaffie and Rolf E. Gilbertson, St. Paul, for appellant.

Dean K. Johnson, Bloomington, for St. Paul School Dist. No. 625, et al.

Lommen, Nelson, Sullivan & Cole, Mark Sullivan and Brad Eggen, Minneapolis, for The St. Paul Companies.

AMDAHL, Chief Justice.

This is an appeal from an order of the Ramsey County District Court, dated February 12, 1981, finding that St. Paul School District No. 625 (School District) was entitled to be added as an insured to the policy of appellant The Home Indemnity Company (Home), that Home was therefore the primary insurer of the School District, and that a judgment for contribution in favor of Columbia Transit Corporation (Columbia) against the School District in a prior personal injury action was to be satisfied by Home. The trial court also found that respondent Gulf Insurance Company (Gulf) was entitled to judgment against Home for attorneys fees incurred in defending the personal injury action and in prosecuting this declaratory judgment action. We reverse.

This declaratory judgment action arose out of a bus accident on October 31, 1974, at Longfellow School in St. Paul, where Tamara Lewis, a student, was injured while waiting for her bus. A prior action on her behalf was initiated against Columbia and the School District. The jury in that action found that Columbia and the bus driver were 20% negligent and that the School District was 80% negligent. The negligence on the part of the School District was divided between negligence in loading procedures (40%) and negligence in supervision of students (40%). The parties stipulated to damages in the amount of $190,000.

The trial court in the Tamara Lewis action ordered that Columbia was entitled to judgment on its cross-claim for contribution against the School District for 80% of plaintiff's damages. Home, as liability insurer for Columbia, satisfied the judgment in full. Gulf initiated this declaratory judgment action to resolve the matter of whether Gulf, Home, or The St. Paul Companies was to pay the contribution ordered from the School District. Appellant Home argues that the School District is not insured under the Home policy and that, consequently, the School District's coverage with Gulf is triggered. Because the policy limits of the Gulf coverage are inadequate to absorb the entire contribution liability of the School District, appellant Home argues that the remainder of the contribution liability rests with The St. Paul Companies under its excess policy with Columbia.[1]

The facts that give rise to this dispute are essentially agreed upon by the parties. On October 10, 1974, the School District and Columbia entered into a written contract covering the 1974–75 school year, pursuant to which Columbia agreed to transport the School District's pupils by bus. As part of that contract, Columbia agreed to keep in force during the term of the contract a liability insurance policy "protecting pupils and public and employees, *and naming the School District as 'additional insured.'* " (emphasis added). The policy was to provide both automobile liability coverage and comprehensive general liability coverage. Attached to and forming a part of that contract was a memorandum requiring Columbia to deliver a copy of the insurance policy to the School District.

An identical contract, with an identical memorandum forming a part thereof, had been entered into between Columbia and the School District in October of 1973 for

---

1. Because Columbia and The Anderson Agency are not involved with respect to these issues, they were dismissed pursuant to a stipulation of all the parties.

the District's school year 1973–74. Prior to the execution of the 1973–74 contract, Home insured the pupil transportation business of Columbia under an "All Liability Insurance" policy; that policy had been provided to Columbia through Home's agent, The Anderson Agency. In connection with the 1973–74 contract, Columbia did not provide to the District a policy of insurance but, instead, it obtained from The Anderson Agency and sent to the District a certificate of insurance dated June 11, 1974, which certified that Columbia had policies in force through Home and an umbrella excess policy through The St. Paul Companies. The certificate of insurance did not name the School District as an additional insured. After the 1974–75 contract between Columbia and the District was executed, Columbia again did not provide a policy of insurance to the District; instead, employees of the School District obtained copies of the June 11, 1974, certificate of insurance and attached copies of that document to the 1974–75 contract.

The insurance policies at issue in this case are detailed and lengthy. In summary, Home insured Columbia under an "All Liability Insurance" policy for a term from April 1, 1974, to April 1, 1975. That policy contained a limit of $2,000,000 for injuries sustained by one person "arising out of the ownership, maintenance or use, including loading and unloading, of any automobile * * *."

The School District was a named insured during the relevant period under its Public Entity policy with Gulf, which afforded comprehensive general liability insurance in the amount of $50,000 for injuries sustained by one person. The Gulf policy contains an exclusion for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of * * * any automobile * * *."

The St. Paul Companies insured Columbia under an umbrella excess policy that contained limits of $3,000,000 for injuries sustained by one person. The policy defined "persons insured" as the named insured and "any person * * * to whom or to which the

Named Insured [Columbia] is obligated by virtue of a written contract to provide insurance such as is afforded by this Policy." The School District qualifies as an insured under this language by virtue of its contract with Columbia. However, the Home and Gulf policies are "underlying insurance" as that term is used in the St. Paul Companies' policy; as a result, St. Paul Companies is liable only for an "ultimate net loss" not covered by other insurance.

The pivotal issue in this case is whether the certificate of insurance provided to the School District by The Anderson Agency had the effect of making the District an additional insured under the Home policy. The trial court found, and the evidence supports the finding, that:

From time to time during the terms of defendant Home's "All Liability Insurance" coverages of Columbia, the Home's agent, The Anderson Agency, would be called upon by Columbia or by the school districts with which Columbia had a contract to certify that Columbia had liability insurance coverage and that the districts had been added to such liability insurance coverages as "additional insureds"; from time to time The Anderson Agency would issue such certificates, supplying copies thereof to defendant Home which would make the copies of the certificates a part of the underwriting file pertaining to the applicable insurance policy. Another agent of defendant Home followed the same practice with respect to other school busing companies which were insured by defendant Home and which were obliged to name school districts as "additional insureds" on Home policies. Defendant Home did not reject or object to the certificates of insurance which named "additional insureds" to its liability policies.

The Anderson Agency was not requested by Columbia or by the District to issue a certificate of insurance certifying to the naming of the District to The Home's policy * * *; had such a request been received from Columbia or from the District, the Anderson Agency would have issued such a certificate.

Based upon the foregoing facts, the trial court concluded that Columbia breached its contractual obligation to name the School District as an additional insured to a policy of automobile liability and comprehensive general liability insurance coverages, and that the School District waived compliance by Columbia with its contractual obligation. However, the trial court also concluded that under *Julien v. Spring Lake Park Agency, Inc.*, 283 Minn. 101, 166 N.W.2d 355 (1969), the School District was entitled to be added to the Home policy as an additional insured. In addition, the trial court held that, under *Faber v. Roelofs*, 311 Minn. 428, 250 N.W.2d 817 (1977), Home was the primary insurer of the School District as to the 80% negligence assessed against the District, and that because the District had not sustained any "ultimate net loss," The St. Paul Companies' excess coverage was not triggered.

■ 1. We hold that the trial court erred in concluding that the School District was entitled to be added to the Home policy as an additional insured. Subject to the statutory law of the state, a policy of insurance is within the application of general principles of the law of contracts. *Bobich v. Oja*, 258 Minn. 287, 104 N.W.2d 19 (1960). Thus, the concept of legal relations between an applicant for insurance and the insurance company is essentially the same as that between parties negotiating other contracts. *LaFavor v. American National Insurance Co.*, 279 Minn. 5, 155 N.W.2d 286 (1967). It is also well established that an agent of an insurance company, acting with actual, apparent, or implied authority, can bind the company to coverage by oral representations to an insured. *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966). These principles were applied in *Julien v. Spring Lake Park Agency, Inc.*, 283 Minn. 101, 166 N.W.2d 355 (1969), where we held that the plaintiff contractor was entitled to coverage where the insurer's authorized agent had told the plaintiff that he was covered by insurance but had failed to communicate this to the insurance company. We extended coverage, in spite of the fact that the insurer was unaware that the agent had given an oral binder, because "[t]he exigencies of modern business require and justify reliance on oral agreements of insurance entered into by agents acting with apparent authority." *Id.* at 104, 166 N.W.2d at 357 (quoting *Nehring v. Bast*, 258 Minn. 193, 203, 103 N.W.2d 368, 376 (1960).

■ The trial court erroneously found *Julien* to be controlling in the instant case by placing undue reliance on language in *Julien* that the insurer would have issued the policy promptly upon transmission to it of the oral binder. *Id.* 283 Minn. at 104, 166 N.W.2d at 357. The trial court in the instant case found that "had such a request [to name the District as an additional insured] been received from Columbia or from the District, The Anderson Agency would have issued such a certificate" and that the premium paid by Columbia for its coverage under the Home policy was "measured by the gross receipts of Columbia and the adding of the District as an 'additional insured' by means of an agent's certificate would not have increased or decreased that premium." However, we did not hold in *Julien* that coverage will be found whenever a plaintiff can show that a mere request to the insurance company would have resulted in the issuance of a policy. This court's holding in *Julien* did not depart from the application of simple contract principles. It is essential to the formation of a contract of insurance that there be mutual assent of the parties. 12A J. Appleman, *Insurance Law and Practice* § 7196 (1981). In *Julien*, mutual assent was accomplished through the oral binder that the agent gave to the insured. Here, there was no conduct on the part of The Anderson Agency that could bind Home.[2] The trial

2. There was much testimony at trial concerning the legal effect of the issuance of a certificate of insurance by The Anderson Agency to the School District. The preponderance of the evidence established that the certificate of insurance functions both to certify that certain coverages exist in favor of the entity named on the certificate and to add as an additional insured, when appropriate, other entities that request such coverage. The evidence supports the

court's finding that the School District was an additional insured on the Home policy is therefore reversed.

■ 2. The trial court also held that the School District's acts of negligence, *i.e.*, negligent supervision of students and negligent loading procedures, fell within the coverage provided by the Home policy, which extended to bodily injury "arising out of the ownership, maintenance or use, including loading and unloading, of any automobile." An *exclusion* in the Gulf policy contains virtually identical language. Because we hold that the School District was not insured by Home, the issue on appeal becomes whether the District's acts of negligence fall within the scope of the exclusionary clause in the Gulf policy.

*Faber v. Roelofs*, 311 Minn. 428, 250 N.W.2d 817 (1977), involved a factual situation nearly identical to the instant case. In *Faber* the plaintiff was a student who was injured as he ran out into the street alongside his school bus, slipped, and fell under the wheels. The jury found the school 25% negligent, the school district 20% negligent for its actions in establishing bus routes and 20% negligent for its bus loading and unloading procedures, and the plaintiff 35% negligent. The school district had a general liability policy with Tri-State Mutual Insurance Company that contained an exclusion for "bodily injury arising out of the use" of the bus. The school district was an additional insured under the bus owner's automobile liability policy with Mutual Service Casualty Insurance Company, which covered "bodily injury arising out of the use" of the bus.

In holding that Tri-State was estopped from denying coverage because of its action in controlling the defense of the action without a reservation of rights, we rejected Tri-State's argument that it was required to defend the action because one of the claims asserted against it fell within the policy coverage. *Id.* at 431–32, 250 N.W.2d at 820. Plaintiff's complaint alleged claims based on negligent supervision of students

and negligent loading procedures. Tri-State argued that the negligent supervision claim was not covered by the exclusionary language. We held that "[i]t matters not that the [claim of negligent supervision] is a claim of general negligence; the injuries arose out of the use of the bus and the exclusion would apply." *Id.* at 435, 250 N.W.2d at 821–22.

Mutual, on the other hand, argued that the injuries did not "arise out of the use" of the school bus because they were caused by the school district's negligence in establishing bus routes and bus loading procedures. We rejected this contention and indicated all that need be established is that a "but for" causal relation exists between the use of the vehicle and the injury. *Id.* at 436–38, 250 N.W.2d at 822–23. *See also Rausch v. Beech Aircraft Corp.*, 277 N.W.2d 645, 647 (Minn.1979) (at least a causal connection but not necessarily proximate cause is required). Therefore, *Faber* provides that negligent supervision, negligence in establishing bus routes, and negligence in establishing loading and unloading procedures are all within the ambit of the language "arising out of the use" of a motor vehicle, whether that language is inclusive or exclusive of coverage.

■ The import of *Faber*, insofar as this declaratory judgment action is concerned, is that the exclusion in the Gulf policy for injuries arising out of the use of a motor vehicle must be deemed applicable unless Gulf, by controlling the defense of the School District in the main action, has waived its right to assert the exclusion. In *Faber*, we held that Tri-State was estopped from denying coverage because it controlled the defense of the action without a reservation of rights. 311 Minn. at 431–34, 250 N.W.2d at 820–21. Appellant Home argues that *Faber* is controlling, but the evidence suggests that Gulf did make a reservation of rights, albeit at a late stage of the litigation. On January 9, 1978, more than 3 years after the accident and shortly before

finding that the School District was not added to the Home policy as an additional insured and

that the District never requested that it be added.

trial of the main action, a representative of Gulf sent a letter to the School District containing a notice of Gulf's reservation of rights. Gulf proceeded to defend the School District in the main action and on appeal; it also has pursued this declaratory judgment action through the appeal process. However, there is no indication that the School District was prejudiced by Gulf's conduct of the litigation and, in fact, it appears that the School District's attorney worked with the Gulf attorneys in preparing for trial, although he was not actively engaged in defending the action. The School District's counsel was also present at trial. We do not feel that Gulf's rather late reservation of rights prejudiced the ability of the School District's counsel to control the defense, had he so chosen, or to make or negotiate a settlement before the jury gave its verdict.

Admittedly, this court has shed doubt on the propriety of an insurer reserving its rights but controlling the litigation. In *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389 (Minn.1979), we enforced an insurer's duty to defend a suit that does not clearly fall within an exclusion to the policy and went on to state:

> We recognize that requiring Great American to defend the suit against Rupp creates a conflict of interest for Great American because it would be required to take opposing positions at trial to defend Rupp against plaintiffs' claim and, at the same time, to defend itself on the coverage question.[2] This conflict of interest does not relieve Great American of its duty to defend, but rather transforms that duty into the duty to reimburse Rupp for reasonable attorneys' fees incurred in defending the lawsuit. * * * Rupp should retain its own counsel to defend against plaintiffs' claim. Great American is required to reimburse Rupp for this expense and should have its own counsel present at trial to establish the facts necessary to determine the coverage question. To the extent that *F. D. Chap-*

*man Const. Co. v. Glens Falls Ins. Co.*, 297 Minn. 406, 211 N.W.2d 871 (1973) and *Bituminous Casualty Corp. v. Bartlett* [307 Minn. 72, 240 N.W.2d 310 (1976)] hold that the insurer should defend its insured while reserving the right to contest coverage, they are hereby overruled.

*Id.* at 391 (citations omitted). In footnote 2 we intimated that the insurer should bring a declaratory judgment action prior to trial to avoid the conflict of interest. *See id.* n.2.

However, *Prahm* was decided 1 month after the trial court in this case entered judgment in the main action. Therefore, Gulf should not be prejudiced when it conducted its actions in accordance with existing law. Moreover, Gulf did commence a declaratory judgment action prior to trial, but the trial court stayed the action pending the determination of liability in the personal injury action. Therefore, we hold that the exclusionary clause in the Gulf policy protects Gulf from liability for the contribution judgment against the School District and, further, that Gulf's conduct has not worked an estoppel of its right to assert the exclusion.

■ 3. The final coverage issue raised is the coverage afforded by The St. Paul Companies. The St. Paul Companies provided umbrella insurance coverage to Columbia and to "any * * * organization * * * to whom or to which the Named Insured [Columbia] is obligated by virtue of a written contract to provide insurance such as is afforded by this Policy." This coverage extends to the District. The contract between Columbia and the School District required Columbia to provide liability insurance protecting pupils for personal injury. The St. Paul Companies' policy provides this type of coverage by providing that when underlying insurance does not apply to an occurrence the insurer will pay whatever amount the insured is obligated to pay (in this case $152,000, or 80% of $190,000). Because the Home and Gulf policies do not afford coverage, The St. Paul Companies' policy is invoked.[3]

---

**3.** The trial court's conclusion that the School District waived Columbia's contractual obliga-

tion to provide insurance naming the District as an additional insured does not preclude the

4. The trial court found Home liable to Gulf for attorneys fees in the amount of $22,210 that were incurred in the defense of the main action and in the prosecution of this declaratory judgment action. In support of the award, the trial court cited *Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976); *Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966); and *Security Mutual Casualty Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878 (1975). None of the cited cases supports the trial court's ruling.

*Integrity Mutual* does not even speak to the issue of attorneys fees; that case involved a conflict between two insurers as to applicable coverages for damages arising out of an automobile accident. *Morrison* involved the right of an *insured* to recover attorneys fees where the insurer refused to defend the main action in violation of its contractual duty to defend. *Morrison* has been strictly limited to the facts of that case. In *Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 276 Minn. 362, 150 N.W.2d 233 (1967), we explained the *Morrison* rule as follows:

> [T]hese authorities * * * are confined to the issue of a breach of contract in an action between the insured and the insurer. They do not relate to a dispute between two insurance companies having separate policies covering the same insured. * * * [N]o contractual obligation [exists] to make one insurer accountable to the other for a breach of its independent obligation to the insured. The obligation of defending an insured and paying for the defense is a separate obligation existing exclusively between the insurer and the insured.

*Id.* at 366, 150 N.W.2d at 236 (footnote omitted).

In *Security Mutual*, we held that an *insured* could recover attorneys fees incurred in defending a declaratory judgment action brought by the insurer. That case was decided on the basis of the particular wording of the insurance policy at issue. The decision has no application to the facts of this case.

Gulf also relies upon equitable notions of contribution and subrogation as a basis for recovery of attorneys fees from Home. We have specifically rejected contribution and subrogation as bases for recovery of attorneys fees in a similar case and we do so in this case. *See Iowa National Mutual Insurance Co. v. Universal Underwriters Insurance Co.*, 276 Minn. at 368, 150 N.W.2d at 237.

It may also be observed that the expenses incurred by Gulf were primarily expended to protect its own interests. They are Gulf's expenses of doing business. Moreover, in light of our holding that Home is not liable for satisfying the contribution judgment, there is no legal basis for recovery by Gulf of its attorneys fees because Home cannot be said to have breached its duty as a primary insurer to defend. The trial court's award of attorneys fees is therefore reversed.

In summary, we hold that no contract of insurance existed between Home and the School District, that the exclusion in the Gulf policy is applicable and therefore no liability exists on the part of Gulf, that the judgment for contribution against the School District should be satisfied by The St. Paul Companies, and that the trial court's award of attorneys fees to Gulf is reversed.

Reversed.

YETKA, Justice (dissenting).

I respectfully dissent and would affirm the trial court. Home Indemnity, as insur-

District from invoking St. Paul Companies' excess policy for two reasons. First, we are troubled by the trial court's conclusion that the District waived Columbia's contractual obligation. There are no facts in the trial court's findings to support such a conclusion, and we have found none in the record. Second, even if the District knowingly waived its contractual right to be named as an additional insured on a policy providing primary coverage, there is no evidence to suggest that it also waived its rights as an insured under the St. Paul Companies' excess policy.

er for Columbia, must have been aware of Columbia's contract with the school district which required Columbia to keep in force a liability policy naming the school district as an additional insured. During the contract period, the parties agreed that Columbia did not obtain a certificate naming the school district as an additional insured, but would have had the school district requested it. Home Indemnity presumably would not have increased Columbia's premium to provide such an endorsement.

Both Columbia, which has a number of contracts to transport school children throughout the metropolitan area, and Home Indemnity were sophisticated enough to be aware that Columbia had contracts with a number of other school districts obligating Columbia to provide them with additional insured coverages. Moreover, it is difficult for me to see how Columbia was entitled to any indemnity against the school district if, in fact, it had breached its contract to provide the very insurance coverage that it now denies that it provided.

It appears, therefore, that this case is covered by *Julien v. Spring Lake Park Agency, Inc.*, 283 Minn. 101, 166 N.W.2d 355 (1969). Because it is apparent that Home Indemnity was aware of Columbia's contractual obligations and continued to insure Columbia, Home Indemnity should be deemed to have accepted the school district as an additional insured. Therefore, I would hold that Home Indemnity was the primary insurer in this case and affirm the trial court.

TODD, Justice (dissenting).

I join in the dissent of Justice Yetka.

OTIS, J., took no part in the consideration or decision of this case.