**T.P.B. PROPERTIES, a partnership, Appellant,**

v.

**COLDWELL, BANKER & COMPANY, Respondent.**

No. C4-84-236.

Court of Appeals of Minnesota.

Sept. 4, 1984.

Robert J. Tansey, Sharon D. Nelson, Stacker & Ravich, Minneapolis, for appellant.

Richard I. Diamond, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, for respondent.

Heard, considered, and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

This is an appeal by appellant T.P.B. Properties from judgment for respondent Coldwell, Banker & Company. The trial court granted Coldwell Banker's motion to dismiss T.P.B.'s case after T.P.B.'s presentation of its case-in-chief, on the grounds that T.P.B. failed to show a right to relief on any of the theories presented by it. We affirm.

## FACTS

Late in 1976, Thomas Barrett, a partner of appellant T.P.B. Properties (T.P.B.), entered into an oral agreement with Joseph Zwak, a real estate agent employed by respondent Coldwell Banker (Coldwell), for Zwak to act as Barrett's agent in the purchase of commercial investment property.

Barrett was a contractor and licensed real estate agent for many years. The trial court characterized him as "an extremely sophisticated investor" because he formed and operated real estate and construction companies since 1960 and has been the sole owner of a construction company called Land Tech Construction Company since 1971. Barrett has also held ownership interests in five real estate partnerships and developmental projects.

In 1975 Barrett sought commercial investment opportunities because the economic recession had cut back the volume of work available for Land Tech. He hoped to invest in rehabilitation or development projects to keep Land Tech busy during the 1975–76 building recession, and he also wanted to create an investment tax shelter for himself.

Barrett contacted Zwak to assist him in locating an investment opportunity. Zwak was well qualified as a commercial real estate broker. After considering other potential investment opportunities, Zwak informed Barrett in November 1976 of the availability of a commercial property on Bellaire Avenue and County Road F in White Bear Lake, then developed as the site of a Warner Home Care Center. The Warner building was situated adjacent to a strip shopping center which included a Red Owl grocery store.

Zwak and Barrett met several times to discuss the Warner property. Demographic information was obtained as was information about the Warner building. Barrett

asked Zwak to ascertain the volume of business done by the Red Owl store in the adjacent building because an "anchor tenant," such as the Red Owl store, would draw large numbers of people to the smaller stores Barrett planned to develop.

Zwak testified that he told Barrett that he could call an acquaintance, Mr. Crowley, at Red Owl and ask, but that there would be no way to verify the numbers due to the confidentiality of those statistics.

In November 1976, Zwak contacted Crowley by telephone about the sales volume of the Red Owl store. Zwak testified that Crowley told him that the store was doing around $100,000 business per week. Crowley testified that, although he did not specifically recall this conversation with Zwak, he did not have any reason to believe that Zwak was not truthfully reporting Zwak's conversation with him.

Crowley testified that, although the sales figures were confidential information, he might give out rounded figures. On cross-examination, Crowley admitted that if Zwak had called and said, "How are things going at White Bear Lake? Are you doing around a hundred thousand?", he would have agreed.

Since the $100,000 figure could not be verified by Crowley, Zwak testified that he consulted a market analyst and the owner of the land and building that the Red Owl store occupied to attempt to verify the sales volume figure. Both sources told Zwak that the figure sounded plausible.

Barrett purchased the property in the summer of 1977 for $295,000. Simultaneously, Barrett asked Zwak to list and lease the retail space in the remodeled Warner building. Zwak secured three leases with some tenants and the center went into operation.

In less than a year, two of Barrett's tenants went out of business. Eventually, Barrett rented some space at a nominal rate to a political candidate for a couple of months and then to a religious group. Red Owl closed its store at the adjacent location in 1980. Barrett sold the property in November 1982, incurring an alleged $600,000 loss.

T.P.B. brought action against Coldwell for damages arising from the sale of the shopping center, alleging fraud, negligence, and breach of fiduciary responsibility by Coldwell. The matter was tried to the court without a jury.

At trial, Barrett contended that T.P.B. purchased the Warner building in reliance upon Zwak's statement that the Red Owl store had a weekly sales volume of $100,000, and that it was one of Red Owl's better stores. He claims that because of this one essential alleged misrepresentation, he lost over $600,000. In response, Coldwell presented evidence that Barrett considered numerous factors, including tax shelter benefits, location, and volume of the Red Owl store, etc. in deciding whether to make the purchase.

At the close of T.P.B.'s case, the trial court granted Coldwell's motion to dismiss the case for failure of T.P.B. to establish a right to recover on any theory presented. The court's findings include the following:

10. Zwak reported to Barrett that the sales of the adjacent Red Owl Store were approximately One Hundred Thousand Dollars ($100,000) per week. Barrett was informed by Zwak or should have known that Zwak had obtained the figure from Crowley and because of the confidential nature of such sales figures, the figure was incapable of precise verification.

11. The actual sales figures for the Red Owl Store for the twelve (12) month period ending January 29, 1977, was (sic) approximately Seventy-one Thousand Dollars ($71,000) per week; however, this information could not have been obtained at the time and was not in fact obtained until the commencement of this lawsuit,

\*     \*     \*     \*     \*     \*

14. The Red Owl sales figures represented by Zwak to Barrett, although

technically susceptible of knowledge, were incapable of verification at the time, a fact known to Barrett.

15. Zwak performed all acts which could reasonably be expected of a real estate broker to attempt to verify such sales figures. Zwak had no reason to know that the sales figures given to him by Crowley were false.

16. Based upon Barrett's knowledge, intelligence and experience, Barrett was not justified in relying upon the Red Owl sales figures presented to him by Zwak.

### ISSUES

1. Whether the trial court erred in granting Coldwell's motion for dismissal at the close of T.P.B.'s case-in-chief, and in applying provisions of Rules 41.02(2) and 52.01 Minn.R.Civ.P.

2. Whether the trial court's finding that T.P.B. failed to establish a prima facie case on the basis of either fraud, negligence, or breach of fiduciary duty is supported by the record and thus not clearly erroneous.

### ANALYSIS

1. Rule 41.02(2), Minn.R.Civ.P., states: After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that, upon the facts and the law, the plaintiff has shown no right to relief. *In an action tried by the court without a jury, the court as trier of the facts may then determine them and render judgment against the plaintiff* or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, *the court shall make findings as provided in Rule 52.01.*

(Emphasis added.)

■ T.P.B. contends that the standard of review to be applied by this court is to determine whether T.P.B. presented *any* evidence upon which a decision in its favor could be sustained. We cannot agree.

In *Fidelity Bank & Trust Co. v. Fitzimons*, 261 N.W.2d 586 (Minn.1977), the Minnesota Supreme Court said:

The standard of review changes when the trial court dismisses a case under Rule 41.02(2) and makes findings. A bare dismissal would call for a view of the evidence most favorable to the plaintiff. *Arens v. Minneapolis-Moline, Inc.,* 298 Minn. 521, 213 N.W.2d 336 (1972). However, under the preferred practice of the trial court's making written findings, the review standard is that of Rule 52.01. See, 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 197.

*Id.* at 588, n. 5.

■ Since this case was dismissed pursuant to Rule 41.02(2) with written findings of fact by the trial court, the proper standard of review is under Rule 52.01. The findings of a trial court may not be set aside unless they are clearly erroneous.

■ 2. A finding is clearly erroneous if—

* * * 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'

*In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972) (quoting *United States v. Oregon State Medical Soc.,* 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952)).

■ Due regard must also be given to the trial court's opportunity to observe the witnesses and assess their credibility. *Werner v. Miller,* 248 Minn. 75, 78 N.W.2d 63 (1956); Rule 52.01, Minn.R.Civ.P.

■ Conflicting testimony was presented to the trial court by the parties. The trial court, sitting as the trier of fact, determined that T.P.B. did not have a prima facie case. At oral argument on appeal, T.P.B. conceded that there was nothing left for it to present to the trial court had it not granted the dismissal. Thus, that court made its decision based on all of the evi-

dence that plaintiff had to present. It was also in the best position to observe the witnesses and assess their credibility. The trial court's findings were not clearly erroneous, and must be sustained.

### DECISION

The trial court's findings pursuant to Rule 41.02(2) and 52.01 Minn.R.Civ.P. dismissing T.P.B.'s cause of action after its case-in-chief, for failure to establish necessary elements of its claims, are supported by the evidence as a whole.

Affirmed.