**Thomas GLODEK, et al., Appellants,**

**v.**

**Stanley ROWINSKI, Personal Representative of the Estate of Joseph Kapala, et al., Respondents.**

No. C5–85–2006.

Court of Appeals of Minnesota.

July 22, 1986.

Review Denied Sept. 24, 1986.

---

William G. Clelland, Minneapolis, for appellants.

R. Gordon Nesvig, Minneapolis, for respondents.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Joseph Kapala, deceased, and Thomas Glodek, appellant, owned stock in a funeral service corporation and owned real estate as partners. The two had signed agreements permitting the survivor the right to purchase the other party's stock and his partnership interest. When Kapala died, Glodek attempted to exercise his purchase rights. The estate refused to sell, claiming that Glodek's offer was too low and that Kapala's signature on the corporate agreement had been forged. Glodek brought suit to enforce the stock sale agreement and the partnership buy-out agreement.

In an amended answer and countercomplaint, the estate abandoned an earlier defense, sought to have appellant purchase the estate's stock and partnership interests, and sought prejudgment interest for the sale. The trial court ordered the sale and ordered appellant to pay prejudgment interest. Glodek appeals, claiming the trial court improperly allowed the estate to amend its answer and countercomplaint and improperly ordered payment of prejudgment interest. We affirm in part, and reverse in part.

## FACTS

Appellant Thomas Glodek and Joseph Kapala, deceased, were the sole stockholders of a funeral service corporation called Kapala-Glodek Funeral Services, Inc., and they owned property as partners. At the time of Kapala's death, the partnership owned two mortuaries in the Twin Cities, two condominiums in Florida, some undeveloped real estate, and a store in Minneapolis.

In 1973, appellant and Kapala executed a corporate stock purchase and redemption agreement. The agreement provided that in the event of the death of a shareholder "all of the shares of the Company owned by the Decedent at the time of his death * * * shall be purchased by the Company and/or the surviving Shareholder * * *." The parties agreed that, for the purpose of selling a deceased shareholder's stock, the value of each share of stock would be $400 plus the decedent's share of previously taxed income retained by the corporation divided by the number of shares owned by the decedent shareholder. The estate of the decedent was required under the agreement to sell all the decedent's shares to the company at this rate; the funds for the purchase were to come first from the amount of any life insurance proceeds paid to the company for the death of decedent. The closing of the transaction would occur not less than 60 days nor more than 70 days "following the end of the Company's fiscal year in which the decedent's death occurred." If the surviving shareholder was the purchaser, then the shareholder was to pay one-fourth of the purchase price in cash and the remainder in monthly installments over a period not to exceed three years. The agreement provided that if a selling shareholder or representative was dissatisfied with the purchase price, the seller and the purchaser would each appoint an individual appraiser, and the two appraisers would appoint a third appraiser. This team of three appraisers would then determine a value per share of the company's stock.

In 1977, appellant and Kapala undertook a reorganization of their business structure and executed an amended partnership agreement. Under this agreement, the deceased partner's interest would be purchased in cash within twelve months from the date of death unless the surviving partner and the decedent's estate agreed to an extension of this time period. The amend-

ed agreement also provided that the purchase price would be paid in lieu of "all further rights to share in the Partnership capital * * *, including * * * furniture, equipment and supplies, accounts receivable, Partnership goodwill, going concern value and other assets, if any."

When Kapala died in February 1982, neither the estate nor appellant immediately made any effort to have the corporate and partnership assets valued and sold. Appellant commenced making monthly maintenance payments to Kapala's widow of $1500 to $2000. These payments totaled $66,000 at the time of trial.

During the summer of 1982, appellant attempted to assert his purchase rights. Respondents claimed that they rebuffed appellant's attempts to buy Kapala's interests in the corporation and the partnership because appellant did not make a reasonable offer and because they suspected Kapala's signature on the corporation agreement was forged. When the parties could not reach an agreement regarding the sale, appellant brought suit seeking a declaratory judgment and enforcement of the provisions of the corporate and partnership agreements. In their answer and countercomplaint, the respondents claimed that Kapala's signature on the corporate agreement was forged; they sought dissolution and liquidation of the partnership and corporation. Soon after trial began, respondents sought leave to amend their answer and countercomplaint, and the trial court granted the motion. In the amended pleading, respondents alleged that life insurance proceeds paid to Glodek upon the death of Kapala were corporate or partnership assets. Respondents again sought partition or liquidation of the assets. Fifteen months after the trial, and two months after the trial court received the report of an independent accounting firm, the respondents, deciding that there was insufficient evidence of any forgery, again sought leave, which was granted, to amend the answer and countercomplaint. In the second amended answer and countercomplaint, respondents admitted the validity of the corporate agreement and sought the estate's share of Kapala's corporate and partnership interests. Respondents also sought prejudgment interest.

The trial court ordered an appraisal of the corporate and partnership assets, determined the value of the disputed assets from the appraisal, and ordered appellant to purchase them. The court found that the corporation had assets worth $202,966 and that the decedent's interest was worth $101,483. The trial court added $3577 to that amount, finding that decedent was entitled to some previously undistributed income.

The trial court found that appellant's cost for decedent's partnership interest was $395,143, including $159,688 for decedent's partnership capital account and $235,455, one-half of the appraised value of various partnership assets in excess of original cost or valuation.

The trial court also granted respondents' request for prejudgment interest from the dates for payments set forth in the corporate and partnership agreements, finding that the amounts in controversy were "easily ascertainable." The trial court found that appellant had made no payments toward the purchase of the assets, finding that the $66,000 appellant paid to Kapala's widow were maintenance payments. The court, however, ordered that the $66,000 paid should be credited against the total amount owed by appellant.

Glodek appeals, claiming the trial court erred in allowing respondents to amend their answer and countercomplaint and in allowing prejudgment interest.

### ISSUES

1. Did the trial court err by awarding respondents prejudgment interest?

2. Did the trial court abuse its discretion by allowing respondents to amend their answer and countercomplaint?

3. Did the trial court err by finding that certain personal property belonged to the partnership?

## ANALYSIS

■■■ 1. Prejudgment interest is appropriate even if a claim is unliquidated, provided the amount of damages is readily ascertainable. *See Lacey v. Duluth, Missabe & Iron Range Railway Co.*, 236 Minn. 104, 107–08, 51 N.W.2d 831, 834 (1952). Interest accrues from the date the payment should have been made. *See id.* at 108, 51 N.W.2d at 834. A mere disagreement as to the amount owed will not bar the accrual of interest. *Id.*

Respondent argues that the trial court properly awarded prejudgment interest because the only reason appellant and respondent did not reach an accord was that appellant's offer was unreasonably low. Appellant argues that prejudgment interest was not mandated in this case because it was the respondents' failure to negotiate and their claim that decedent's signature was forged that prevented the parties from consummating the deal. The award of prejudgment interest, appellant argues, rewards respondents for their own wrongful behavior. Except for recitation of appellant's maintenance payments, none of the trial court's findings address the posturing of the parties after Joseph Kapala's death.

Appellant also argues that the award of interest was improper because appellant had paid a total of $66,000 toward the purchase of the decedent's interest. Respondents claim the funds paid by appellant were maintenance payments to the decedent's widow, who had no other means of support. The trial court adopted the respondents' position, finding that the payments by appellant were in the nature of maintenance for the decedent's widow, but determined that the maintenance funds already paid should be credited against the appellant's indebtedness to the estate.

The trial court's findings of fact will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. A finding is clearly erroneous if a reviewing court is left with a definite and firm conviction a mistake has been made. *T.P.B. Properties v. Coldwell Banker & Co.*, 354 N.W.2d 102, 105 (Minn. Ct.App.1984). The trial court's finding that the values at issue here were easily ascertainable is erroneous.

■■■ It is true that the value of real estate is generally readily ascertainable because of the applicability of the fair market value standard. *See Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971) (fair market value is a standard by which a valuation is readily ascertainable). The property in this case, however, required months of work by appraisers; even when the appraisals were completed, the trial court had to act as arbitrator and choose among the valuation figures. Furthermore, the property in this case was uniquely improved real estate used almost exclusively for the operation of a mortuary business. This is an atypical valuation of special use property. In addition, an award of prejudgment interest is inappropriate in this case because the estate contributed to the failure of the parties to conclude the sale and to ascertain the value of the assets. The sellers adopted a litigation strategy in which they opposed the sale of the property and sought the dissolution of the corporation and the partnership. This position was not abandoned until more than one year after the trial proceedings in 1983. This conduct by the sellers cannot equitably be brought to bear upon the appellant. Furthermore, by choosing to resist the sale, respondents discarded the option of arbitration that the partners had stated in their partnership agreement. In contrast, the buyer made regular payments toward the purchase of the property, even though no deal had yet been consummated, and maintained a posture favorable for an eventual purchase.

■■■ The seller's resistance to the sale of the property also precludes a finding that the value of the property was readily ascertainable, because that posture stood in the way of arrangements for an appraisal. The seller's conduct militates against the underlying policy reason for awarding prejudgment interest: prejudgment interest is awarded to fully compensate an obligee from whom payment has been withheld by an obligor. *See Toombs v. Daniels*, 361

N.W.2d 801, 810 (Minn.1985). The payment of prejudgment interest cannot be required of an obligor when it is the obligee who has resisted the payment of the debt.

The respondent argues that prejudgment interest is appropriate in this case because appellant has enjoyed the fruits of the business from the time of Kapala's death and has not shared them with the estate. That argument is not persuasive in light of respondents' resistance to the sale and the fact that this transaction could have been concluded much earlier had respondents not erected barriers to the sale.

2. A trial court has broad discretion in the granting or denying of a motion to amend a pleading. *Dale v. Pushor*, 246 Minn. 254, 261–62, 75 N.W.2d 595, 601 (1956).

A trial court should deny a motion to amend if the granting of the motion would result in prejudice to the opposing party. *Hughes v. Micka*, 269 Minn. 268, 275, 130 N.W.2d 505, 510 (1964). Appellant argues that this is a case in which the motion to amend should not have been granted because the amendment resulted in prejudice to appellant. Appellant incurred expense and spent time preparing to prove the authenticity of the decedent's signature on the corporate agreement, and then respondents nullified appellant's efforts by amending their pleadings, admitting the authenticity of the signature, and then seeking prejudgment interest because of appellant's failure to tender payment for the decedent's share of the partnership and corporation.

Respondents argue that they in good faith believed that the decedent's signature on the corporate agreement was a forgery. The decedent's personal representative, upon seeing the corporate agreement, stated the signature was a forgery. The personal representative claimed to have seen the unsigned document in the company safe after decedent died. Respondent also claims that before the suspicion of forgery had arisen, appellant and the estate had attempted to negotiate the sale of decedent's interests but that appellant refused to negotiate in good faith.

Appellant has not been materially prejudiced in this case. Although respondents apparently had a good-faith belief that the decedent's signature was a forgery, they were confronted with what they deemed to be an insurmountable proof problem. Respondents decided to change their tactics, to no real detriment to appellant since appellant had earlier been trying to prove exactly the point conceded by respondents. In light of the great deference reviewing courts give to the trial courts upon this issue, the granting of leave to amend was not an abuse of discretion.

3. The trial court found that certain personal property carried on the books of the partnership followed the partnership and would belong to appellant upon appellant's purchase of the partnership interest. The partnership agreement expressly excludes the value of personal property from the formula for determination of a survivor's purchase price. The trial court's finding is firmly based in the record, especially because of the property's presence in the books, so the finding is not clearly erroneous.

## DECISION

The trial court erroneously awarded respondents prejudgment interest. Respondents had attempted to avoid the sale of decedent's partnership property and cannot now claim that payment of the debt was withheld. The trial court properly allowed respondents to amend their answer and counterclaim and did not err in its determination that certain personal property items were partnership assets.

Affirmed in part and reversed in part.