**Dennis David COONEY, Respondent,**

v.

**MILWAUKEE MUTUAL INSURANCE COMPANY, Appellant,**

**Bowler Agency, Inc., Respondent.**

No. C3–86–751.

Court of Appeals of Minnesota.

Dec. 9, 1986.

James C. Erickson, Peterson, Bell, Converse & Jensen, St. Paul, for Milwaukee Mut. Ins. Co.

Terri J. Stoneburner, Farrish, Johnson & Maschka, Mankato, for Bowler Agency, Inc.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

This appeal is from an amended judgment entered following denial of appellant Milwaukee Mutual Insurance Company's post-trial motion for amended findings or for a new trial. Respondent Dennis David Cooney had commenced this action against Milwaukee Mutual and its agent, respondent Bowler Agency, Inc., alternately seeking declaratory relief or damages. Milwaukee Mutual cross-claimed against Bowler, alleging that if found liable to Cooney it was entitled to contribution and indemnity.

Following trial, the court determined that Bowler had been negligent in its relationship and dealings with Cooney and that Milwaukee Mutual was responsible for Bowler's negligence, that Bowler and Milwaukee Mutual were estopped from denying coverage, and that Milwaukee Mutual was not entitled to indemnity from Bowler. On appeal, Milwaukee Mutual contends that the trial court's findings and conclusions are not justified by the evidence and are contrary to law.[1] We affirm.

## FACTS

After purchasing his first automobile in September 1983, Cooney contacted Tom Hunt, an insurance agent and friend employed by Bowler. Bowler had handled the insurance needs of the Cooney family for a number of years.

Harry F. Christian, Christian, Spartz & Keogh, Le Center, for Dennis David Cooney.

1. In the original judgment, Cooney was only awarded property damage arising out of the accident and costs and expenses arising out of the third-party action. His post-trial motion for amended findings was granted, and the judgment was amended to also include an award of attorney's fees, costs and disbursements arising out of this litigation.

Hunt placed coverage with Milwaukee Mutual effective October 5, 1983 through April 5, 1984 for a six-month premium of $402.80. As per company policy, that first premium was paid by Bowler to Milwaukee Mutual. All subsequent premiums, however, were to be billed directly to Cooney by Milwaukee Mutual. Hunt testified that as a matter of course, he usually explained this policy to new customers, yet he did not have an independent recollection of having done so with Cooney. Cooney testified that Milwaukee Mutual's policy of direct billing was never explained to him and that he believed he was to make payments directly to Bowler.

After receiving a check for $402.80 in payment of the entire six-month premium from Bowler and approving the application for insurance, Milwaukee Mutual mailed the policy to Cooney. Attached to the policy was a bill requesting that Cooney remit payment to Bowler before December 15, 1983.

Cooney made no payment until March 1984, when requested to do so by Hunt during a casual meeting. Within a week after that meeting, Bowler received a $200 check from Cooney and credited it against the $402.80 owed by Cooney.

When the policy reached its six-month renewal date in March 1984, Milwaukee Mutual sent its first bill to Cooney and an agent's copy to Bowler. Cooney acknowledges receiving some correspondence from Milwaukee Mutual. When Bowler received the agent's copy of the final notice for the first renewal premium, it sent a letter to Cooney. Within a week of receiving that letter from Bowler, Cooney again sent a $200 check to Bowler. Bowler again credited Cooney's account, bringing his outstanding balance with the agency to $2.80.

Hunt testified that he then sent Milwaukee Mutual $197 as the first installment on Cooney's second six-month policy. At that point, Cooney owed Bowler a total of $199.80.

In June 1984, Milwaukee Mutual claims that it sent Cooney a direct bill for the second installment on his six-month premi-um. Bowler received an agent's copy of this bill and Hunt attempted to reach Cooney by phone on June 22. Cooney received a message from his father that Hunt had called and assumed that the call concerned his insurance premium. Cooney did not immediately return Hunt's call and learned a few days later that Hunt was on medical leave for an extended period of time. Cooney therefore did not attempt to reach Hunt at that time.

Cooney went on vacation in late June 1984. After his return he mailed a $200 check dated July 16, 1984 to Bowler. Hunt was still out of the office. The staff at Bowler accepted the check and deposited it in Cooney's account, leaving him with a credit of $.20.

On July 20, 1984, Bowler received the agent's copy of cancellation of Cooney's policy effective July 6, 1984. No one at Bowler attempted to contact Cooney at that time. Cooney denied receiving direct notice of this cancellation. At trial, Milwaukee Mutual could only show that in the regular course of business its computer would have mailed a cancellation notice to the insured; it could present no evidence that it had actually mailed such a notice to Cooney.

When Hunt returned from medical leave on July 24, 1984, he did not contact Cooney, nor did he instruct anyone else at Bowler to take any action on Cooney's account during his absence.

On August 5, 1984, Cooney was involved in an accident while driving his uninsured vehicle. As a result, he has been sued by the other driver. Milwaukee Mutual denied coverage and refused to defend Cooney in that third-party action, contending that his policy had been cancelled for nonpayment of premium. Cooney commenced this action for declaratory judgment or for damages based on negligence.

At trial, Hunt acknowledged that had he not been out of the office he would have advanced the premium to Milwaukee Mutual as he had in the past. Hunt testified that he knew his actions in advancing pre-

miums for an insured were contrary to Milwaukee Mutual's direct-bill policy. An expert on insurance practice testified that in his opinion the agency "did not carry on the proper duties of a prudent insurance agent." The expert testified that once the insured improperly sent his premium to the agent instead of the company, the direct-bill policy should have been explained to him. He further testified that the agency had an obligation to contact the insured when it received notice of the cancellation of his policy, particularly when a premium payment had been received by the agency a few days before.

## ISSUES

1. Does the evidence sustain the trial court's determination that Milwaukee Mutual was estopped from denying coverage because Cooney had relied upon Bowler to make his premium payments and because Milwaukee Mutual had ratified Bowler's actions by accepting those payments despite its policy of direct billing?

2. Did the trial court properly conclude that Milwaukee Mutual was not entitled to indemnity from Bowler?

## ANALYSIS

On review, it must be determined whether the evidence as a whole fairly or reasonably sustains the findings and whether the findings in turn support the conclusions of law. Minn.R.Civ.P. 59.01. Where a court sits without a jury, its findings of fact will not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01. A finding is clearly erroneous if a reviewing court is left with a definite and firm conviction that a mistake has been made. *T.P.B. Properties v. Coldwell, Banker & Co.*, 354 N.W.2d 102, 105 (Minn.Ct.App.1984).

### I

 Generally, an insurance company is liable for the torts of its agents when they are acting within the scope of their employment. *Eddy v. Republic National Life Insurance Co.*, 290 N.W.2d 174, 176 (Minn.1980). Milwaukee Mutual contends

that it is not responsible for the negligent actions of Bowler and Hunt because the agency was acting contrary to Milwaukee Mutual's policy of direct billing. Based on the testimony of Hunt and of the insurance expert, the trial court properly concluded that Bowler "was negligent in its relationship and dealings with [Cooney] by its failure to notify [him] of the status of his premium payment and by its failure to transfer [Cooney's] premium payment to Milwaukee Mutual."

The trial court further found that Milwaukee Mutual was responsible for Bowler's actions because:

Under the doctrine of ratification, a principal may sanction the originally unauthorized act of its agent by affirmative act or acquiescence. *See Anderson v. First National Bank*, 303 Minn. 408, 227 [228] N.W.2d 257 (1975). By accepting a premium payment from agent Hunt after the initial agency billing, Milwaukee Mutual ratified the agent's acts and cloaked the agent with apparent authority to accept [Cooney's] direct payments and, in turn, to make premium payments to Milwaukee Mutual on [Cooney's] behalf. Consequently, notwithstanding Milwaukee Mutual's previously expressed policy of direct billing, Hunt was acting within the scope of his authority in making payments directly to Milwaukee Mutual.

 Milwaukee Mutual argues that ratification requires knowledge of an agent's unauthorized acts. However, constructive knowledge of Bowler's acts can be imputed to Milwaukee Mutual. A corporation may ratify unauthorized acts of its agent by accepting the benefits of the transaction. *See Forney v. Farmers' Mutual Fire Insurance Co. of North Fork*, 181 Minn. 8, 11, 231 N.W. 401, 402 (1930) (insurance company affirmed unauthorized acts of its agent in accepting and retaining premium payments and was estopped from claiming that no contract of insurance existed). In this instance, Milwaukee Mutual ratified Bowler's actions by accepting at least one premium payment made by Bowler.

The result in this case comports with that in similar cases where an insurance company has attempted to argue that it cannot be bound by the unauthorized actions of its agent. In *Nehring v. Bast*, 258 Minn. 193, 103 N.W.2d 368 (1960), the supreme court held that the insurance company was estopped from denying coverage because its agent had orally promised the insured that he would automatically renew his coverage. Based on the "well recognized" principle that "wherever one of two innocent persons must suffer by the acts of a third, he who by his conduct, act, or omission has enabled such third person to occasion the loss must sustain it," the supreme court reasoned that where a principal has clothed its agent with apparent authority to enter into oral contracts and it has knowledge of and acquiesces in its agent's business practices and usages, the principal is estopped from denying that delegation of authority. *Id.* at 202, 103 N.W.2d at 375–76 (quoting 31 C.J.S., Estoppel, § 103). *See Pesina v. Juarez*, 288 Minn. 379, 181 N.W.2d 109 (1970) (insurance company estopped from denying coverage where insured relied upon agent's authorized representations that she would receive a renewal notice); *Frye v. Anderson*, 248 Minn. 478, 80 N.W.2d 593 (1957).

▮ Milwaukee Mutual further contends that any reliance by Cooney on Hunt's prior advances of premiums was unreasonable, as shown by his failure to ascertain the amount of premiums due, his failure to render the premiums when due, and his failure to inquire as to the status of his coverage. Bowler similarly argues that its actions and those of Hunt did not give rise to a reasonable expectation on the part of Cooney that money would be advanced for his premium in June 1984.

Reliance upon which estoppel is based must be reasonable under the circumstances. *See West Concord Conservation Club, Inc. v. Chilson*, 306 N.W.2d 893 (Minn.1981). In this case, the trial court found that Cooney "neither understood nor was advised of the difference between agency and direct billing, and thought he should pay Bowler agency directly," that he "relied on Bowler Agency to make premium payments and Bowler agency never refused payment from or refunded payment made by [Cooney] to it," and that "Milwaukee Mutual never refused payment from or refunded payment to Bowler Agency, despite Milwaukee Mutual's stated policy of direct billing." Although the trial court never expressly found that such reliance was "reasonable," such a conclusion may be implied from these findings. Viewing the evidence in the light most favorable to the party prevailing below, we conclude that these findings are supported by the evidence.

▮ At trial, Cooney had also argued that Milwaukee Mutual should be estopped from denying coverage because it had improperly cancelled his policy. This contention was not addressed by the trial court, but the following finding was made:

> In the regular course of business, Milwaukee Mutual would have mailed a cancellation notice to the insured after not receiving the premium payment, but there was no evidence, by stipulation or otherwise, that Milwaukee Mutual actually mailed cancellation notice to plaintiff.

While actual receipt of a cancellation notice is no longer required in order to effectively cancel a policy of insurance, the burden is on the insurance company to show proof of mailing of the notice. *See Caduff v. Underwriters Insurance Co.*, 381 N.W.2d 9, 12 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. March 27, 1986). Based on this finding, Milwaukee Mutual has not met its burden of proving effective cancellation of the policy and is estopped from denying coverage.

## II

▮ Milwaukee Mutual contends that it is entitled to indemnity from Bowler. The trial court determined that Bowler need not indemnify Milwaukee Mutual because its alleged negligence did not increase Milwaukee Mutual's risk of loss and was not the

proximate cause of the loss suffered by Milwaukee Mutual. It reasoned:

> Recent cases indicate that mere negligence on the part of an insurance agent is not sufficient to require the agent to indemnify the insurer, absent some additional loss suffered by the insurance company. *Reserve Insurance Co. v. Netzer,* 621 F.2d 314, 316–17 (8th Cir. 1980) (when agent's negligence did not proximately cause the loss suffered by the insurer, insurer not entitled to indemnification from agent); *Holman v. All National Insurance Co.,* 288 N.W.2d 244 (Minn.1980) (distinguishing and retreating from previous rule that agent must indemnify principal from loss resulting from agent's own negligence); *Julien v. Spring Lake Park Agency,* 283 Minn. 101, 166 N.W.2d 355, 357 (1969) (agent need not indemnify insurer for his own negligence when it did not increase insurer's risk of loss or damage); *Norby v. Bankers Life Co. of Des Moines,* 304 Minn. 464, 231 N.W.2d 665, 671 (1975) (when insurer is not prejudiced by the agent's negligence, even though loss is paid out to the insured, agent need not indemnify insurer).

In the instant case, Hunt's negligence did not increase Milwaukee Mutual's risk of loss. Had the payments been made directly to Milwaukee Mutual, it would have been liable for the insured's property damage and the defense of *Claffey v. Cooney.* While the insurance company never received the last premium payment due to it, this loss, of itself, is insufficient to require indemnification.

Milwaukee Mutual argues that this case is distinguishable from those cited by the trial court because Cooney's own wrongdoing caused his loss and because Bowler's actions were unauthorized. These contentions, however, have already been discussed and rejected. Citing *Julien,* Milwaukee Mutual further argues that indemnity is proper where an insurance company succeeds in showing that its loss resulted from "dereliction on the part of the Agency." *Julien,* 283 Minn. at 104, 166 N.W.2d at 357. However, examination of *Julien*

and the other cases cited by the trial court indicates that where an insurance company is merely deprived of its premium and would have written or issued the policy had that premium been paid, any loss sustained by the insurance company is not "caused" by the agent's dereliction. We therefore agree with the trial court's interpretation of this line of cases and conclude that Milwaukee Mutual is not entitled to indemnity from Bowler.

## DECISION

Affirmed.