**CENTENNIAL INSURANCE COMPANY, Appellant,**

v.

**Janet Arlene ZYLBERBERG, et al., Rafael Rosario, Bachman–Anderson, Inc., et al., Grover A. Mullin, et al., Barbara Sarah Kinsella, Respondents.**

**No. C2–87–1805.**

Court of Appeals of Minnesota.

April 5, 1988.

John F. Angell, James D. Knudsen, Lasley, Gaughan, Stich, Angell, P.A., Minneapolis, for Centennial Ins. Co.

Royal C. Orren, Ruttenberg, Griswold, Orren & Associates, St. Paul, for Janet Arlene Zylberberg, et al.

Robert Tennant, Elizabeth Shields, St. Paul, for Rafael Rosario.

Richard P. Wright, Bloomington, for Bachman–Anderson, Inc., et al.

Katherine L. MacKinnon, John Chapman, Arthur, Chapman & McDonough, P.A., Minneapolis, for Grover A. Mullin, et al.

Mark H. Stageberg, Michael Shroyer, Daniel J. Buivid, Jr., Lommen, Nelson, Cole & Stageberg, Minneapolis, for Barbara Sarah Kinsella.

Heard, considered and decided by WOZNIAK, C.J., and SEDGWICK and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

After a declaratory judgment trial, the trial court held that appellant Centennial Insurance Company was bound to provide $500,000 in liability coverage for Janet Zylberberg and property damage coverage of $12,100. The trial court also awarded respondents $20,680 in attorney fees. We reverse and remand with instructions.

## FACTS

This action was brought by Centennial Insurance Company, seeking a declaratory judgment that it afforded no insurance coverage for an accident involving Rafael Rosario as the driver of a vehicle owned by Janet Zylberberg. Respondents Olson and Mullin are the plaintiffs in a separate personal injury suit against Rosario and Zylberberg.

Appellant is an insurance company which issued a commercial policy to American

Case Company, Inc., a family business. David Zylberberg was the president of American Case. On March 23, 1979, Merrill Fischbein, an agent for Bachman–Anderson, Inc., first met with David Zylberberg to discuss the insurance needs of American Case. As a result of their meeting, Fischbein arranged for a commercial policy of insurance for American Case through Centennial Insurance Company. This policy was effective beginning June 25, 1979, with annual anniversary dates. American Case was the named insured, and the policy provided liability, no fault, and comprehensive insurance for various commercial vehicles.

Prior to June 25, 1981, one vehicle was listed on the policy: a 1977 Mercury station wagon. Fischbein also obtained automobile insurance for two vehicles personally owned by the Zylberberg family with the Chubb Insurance Groups. After June 25, 1981, coverage was written on the Centennial policy for all three vehicles. Three members of the Zylberberg family were involved with American Case: David Zylberberg, his wife, Evelyn Zylberberg, and their daughter, Janet Zylberberg. Fischbein knew that Janet Zylberberg would be driving the automobiles listed on the policy.

Because of Janet Zylberberg's past driving record, including two drinking related offenses and driving after revocation, an expert testified at the trial that had Centennial known of this record, she "would never have been accepted had they—they would have thrown her out as a driver of company-owned vehicles." According to this expert, Janet Zylberberg could have only obtained insurance through an assigned-risk or special risk plan.

On March 10, 1982, Janet Zylberberg's personally owned 1977 Granada was added to the Centennial policy, and Janet Zylberberg was named on the policy as the principal driver of that vehicle. On June 7, 1982, Janet Zylberberg made a claim for property damage to the 1977 Granada. This claim was paid under the Centennial policy, apparently without verification of the true owner of the vehicle.

Effective June 25, 1982, Fischbein recommended that David and Evelyn Zylberberg obtain coverage for their personal vehicles through a "Broad Form Drive Other Vehicle" endorsement to the Centennial policy. Fischbein did not recommend such an endorsement for Janet.

In July of 1983 Janet Zylberberg purchased a 1980 Oldsmobile, which was added to the Centennial policy. In April 1984, Janet traded in the 1980 Oldsmobile and purchased the 1983 Trans Am from Christy Pontiac. The Trans Am was financed through GMAC with an $11,779 loan.

Christy Pontiac's representative, Sheri Audette, telephoned Bachman–Anderson regarding insurance coverage for the 1983 Trans Am. Audette verified the insurance by using the GMAC Form 288A, "Agreement to Provide Accidental Physical Damage Insurance", as well as the financing contract and the customer statement which were in the Christy Pontiac file. On the GMAC Form 288A, Janet Zylberberg was listed as the purchaser (meaning owner). As a result of this telephone call, the 1980 Oldsmobile was deleted from the policy and the 1983 Trans Am was added, and Merrill Fischbein executed a certificate of insurance on the 1983 Trans Am.

Fischbein repeatedly assured all of the Zylberbergs that they had complete coverage under the Centennial policy, when in fact the policy never provided coverage for the 1977 Granada, the 1980 Oldsmobile, or the 1983 Trans Am (all owned by Janet Zylberberg).

On October 6, 1984, Rafael Rosario was involved in an automobile collision with Grover and Judy Mullin and Henry and Emily Olson. At the time of the accident, Rosario was driving the 1983 Trans Am with Janet Zylberberg's permission and consent. On October 8, 1984, the accident was reported to Bachman–Anderson. At the same time, the 1977 Ford Granada was added back on to the policy.

Because the Trans Am was destroyed in the accident, Sarah Quinn (an adjuster for Centennial), Merrill Fischbein, and the Zylberbergs negotiated a settlement on the property damage claim in the amount of

$12,100. A settlement draft was issued by Sarah Quinn, payable to the order of "Janet Zylberberg, American Case Co., Inc., and GMAC." Subsequently, Centennial Insurance Company stopped payment on the $12,100 draft and canceled the policy.

Centennial then brought a declaratory judgment action to determine whether coverage was afforded under the policy. A court trial ensued, following which the trial court issued extensive findings of fact and conclusions of law. The trial court held that Fischbein and Bachman–Anderson had been negligent, that appellant Centennial had ratified this negligence, and that Centennial was bound to provide coverage based on this ratification. The trial court also concluded that Centennial was bound to provide coverage because Janet Zylberberg had a reasonable expectation of coverage under the policy.

In addition, the trial court awarded compensatory damages to Janet Zylberberg resulting from the cancellation of the settlement draft. The court also awarded attorney fees to Janet Zylberberg, David Zylberberg and American Case.

Centennial has appealed the trial court's conclusions that Centennial ratified the negligence of Fischbein and the finding of coverage under the doctrine of reasonable expectations.

## ISSUES

1. Were the facts sufficient to support the trial court's finding that Centennial ratified the negligent conduct of agent Merrill Fischbein?

2. Does the doctrine of reasonable expectations apply to add a person as a named insured when the policy in question is not ambiguous?

## ANALYSIS

This court will give deference to the findings of fact made by the trial court unless they are clearly erroneous. Minn.R.Civ.P. 52.01. We will not disturb those findings as long as there is evidence reasonably supporting the trial court's determination. *Lieberman Music Co. v. Hagen*, 404 N.W.

2d 290, 292 (Minn.Ct.App.1987). However, appellate courts need not defer to the trial court when reviewing questions of law. *Morris v. Weiss*, 414 N.W.2d 485, 487 (Minn.Ct.App.1987).

Because no motion for a new trial was made, the scope of review is limited to whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

## I.

Ratification occurs when one having full knowledge of all material facts confirms, approves or sanctions a previous act done on behalf of the principal without authority. *Anderson v. First National Bank of Pine City*, 303 Minn. 408, 410, 228 N.W.2d 257, 259 (1975). When the agent had actual notice of the facts, constructive notice may be imputed to the principal. *Cooney v. Milwaukee Mutual Insurance Co.*, 397 N.W.2d 352, 355 (Minn.Ct.App. 1986). The trial court relied on the rationale in *Cooney* to support its finding that Centennial ratified the negligence of Fischbein and Bachman–Anderson and was therefore obligated to provide insurance.

In *Cooney*, an insurance company was held to have ratified the actions of its agent by accepting premium payments contrary to the company's direct billing policy. In discussing ratification, this court stated that constructive knowledge of the agent's acts could be imputed to the insurer where the insurer accepts the benefits of the transaction. *Cooney* at 355. The trial court found that Centennial accepted the benefits of the negligent conduct by accepting the premium payments.

It is well settled that a principal cannot accept the benefits of the agent's unauthorized conduct and then deny liability based on the fact that the conduct was unauthorized. *Swanson v. Domning*, 251 Minn. 110, 116–17, 86 N.W.2d 716, 721 (1957).

The trial court found that Janet Zylberberg was not covered under the policy

as written, because American Case was the named insured. Therefore, Centennial argues this case is not on point with *Cooney* and the finding of coverage amounts to a reformation of the policy. Reformation was not proper on these facts because there was no showing of the actual knowledge required before an insurance policy can be reformed. *Kashmark v. Western Insurance Companies,* 344 N.W.2d 844, 847 (Minn.1984).

In *Kashmark,* Brett Kashmark was not an insured under the terms of the policy because he was not the named insured, nor was he a member of the named insured's family residing in the same household. The trial court found that Kashmark was a named insured by operation of law. The Minnesota Supreme Court reversed and remanded, stating that, although the party did not expressly seek reformation, nor did the trial court characterize its action as reformation, the effect of the trial court's determination was to reform the policy to make Brett Kashmark a named insured.

> Reformation could be grounded on the actual knowledge of the Sherman Agency that Brett was the owner or co-owner of the Camaro—i.e., on the fact that Eugene Kashmark so informed Western's agent. The record, if it could be said to permit such an inference, certainly does not disclose that clear, precise and convincing evidence which is required for reformation. *Tollefson v. American Family Ins. Co.,* 302 Minn. 1, 226 N.W. 2d 280 (1974).

*Id.* at 847. The case was remanded to the trial court for a determination of whether the insurance company had actual knowledge which would justify reformation. *Id.* at 849.

We find that adding Janet Zylberberg as a named insured amounts to a reformation of the policy. Centennial contends that reformation was improper in this case because it did not have the requisite actual knowledge that Janet Zylberberg was the true owner of the 1983 Trans Am.

■ The trial court in this case made the factual finding that the agent had knowledge of the material facts. Under *Cooney,*

this knowledge may be imputed to the insurer. Specifically, the trial court found that Fischbein knew (1) that Janet Zylberberg owned no other vehicles; (2) that she would be using the personally owned vehicle for business and pleasure; (3) that she had no separate policy of insurance; and (4) that Janet Zylberberg was the principal operator of the 1977 Granada, the 1980 Oldsmobile, and the 1983 Trans Am. There is no specific finding that Fischbein had actual knowledge that Janet Zylberberg was the true owner of the 1983 Trans Am. However, the trial court did find that an employee of the Bachman–Anderson Agency had been informed that Janet Zylberberg was the owner of the 1983 Trans Am.

The trial court also found that Fischbein repeatedly assured all of the Zylberbergs that they had automobile insurance coverage under the Centennial policy, when in fact the policy did not provide liability or collision coverage for Janet Zylberberg while operating the 1977 Granada, the 1980 Oldsmobile, or the 1983 Trans Am.

The trial court's findings do not reflect the clear, precise and convincing evidence which is required for reformation. Our supreme court has stated:

> A written instrument can be reformed by a court if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. * * * These facts must be established by evidence which is clear and consistent, unequivocal and convincing.

*Nichols v. Shelard National Bank,* 294 N.W.2d 730, 734 (Minn.1980) (citations omitted). Because the trial court did not expressly characterize its action as reformation, it did not make the required findings. Therefore, we must remand for spe-

cific findings required by *Kashmark* and *Nichols*.

## II.

 The leading case on the reasonable expectations doctrine is *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn.1985). Several cases, both in this court and the supreme court, have applied and interpreted *Atwater*.

*Atwater* involved a dispute over an unambiguous definition of burglary in a burglary insurance policy. The policy covered losses from burglary only where the evidence showed visible marks of forcible entry. A burglary occurred, but the burglar left no visible marks of forcible entry. For this reason, the insurer denied coverage.

The Minnesota Supreme Court pointed out that other courts and commentators have uniformly found this definition of burglary to be surprisingly restrictive, and that no one purchasing something called burglary insurance would expect coverage to exclude skilled burglaries that leave no visible marks of forcible entry or exit. *Id.* at 276. The court further stated that ambiguity in the contract is not irrelevant, but becomes a factor in determining the reasonable expectations of the insured, along with such factors as whether the insured was told of important, but obscure, conditions or exclusions. *Id.* at 278. The court held that the policy would not be interpreted as to defeat the reasonable expectations of the purchaser. *Id.* at 279.

Our decisions have read *Atwater* to require a finding of either ambiguity or a hidden major exclusion prior to consideration of reasonable expectations of the insured. *See, e.g., Morris*, 414 N.W.2d 488. *See also Sonneman v. Blue Cross and Blue Shield of Minnesota*, 403 N.W.2d 701, 708 (Minn.Ct.App.1987); *Gunderson v. Classified Insurance Corp.*, 397 N.W.2d 922 (Minn.Ct.App.1986); *Merseth v. State Farm Fire and Casualty Co.*, 390 N.W.2d 16, 18 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986).

The trial court found that the circumstances of this case were contemplated by the supreme court in *Atwater*. However, this court has declined to apply *Atwater* except in those specific cases involving either an ambiguity or a hidden exclusion. Neither are present here.

In the absence of ambiguity or hidden major exclusions, the trial court erred in applying the reasonable expectations doctrine.

## DECISION

Extending coverage to insure one who is not a named insured amounts to a reformation of the policy. We reverse and remand for findings of fact relative to reformation under the guidelines set forth in this opinion.

Reversed and remanded.